Cole, Appellant, *v.* Lloyd.

Argued January 7, 1958. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, JONES and COHEN, JJ.

*Fred T. Cadmus, III,* with him *C. Richard Morton* and *Cadmus & Morton,* for appellants.

*Robert S. Gawthrop, Jr.,* with him *Gawthrop & Gawthrop,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 17, 1958:

Route 52 was covered with snow to a depth of from 6 to 8 inches as Harry S. Cole, on the afternoon of January 24, 1954, crossed the Delaware state line and moved northwardly into Chester County, Pennsylva-

nia. His wife and 4-year old son occupied with him the front seat of his Chevrolet coupe. At a point in Pennsbury Township, the wheels of his car fell into ruts in the center of the road and beneath the surface of the snow. He attempted to get out of them by cutting his front wheels sharply to the right. The depth and the slipperiness of the sub-surface grooves were such that he could not reach his own lane of travel, so he proceeded forward, continuing all the time to escape the imprisoning ruts beneath, without ever succeeding in doing so.

Although he had originally been travelling at the rate of from 35 to 45 miles per hour, the frozen barriers reduced his speed considerably until at last he could only move at the rate of 5 miles per hour. While fighting the ruts and the snow, Cole saw a truck a quarter of a mile away, advancing toward him on its own side of the highway. As Cole inched forward in jerks and spurts, the truck, which was being driven by John H. Lloyd, approached unimpededly and without diminution in speed. When the truck was about 150 feet away, Cole sounded his horn to emphasize what must have been quite apparent to the truck driver. During the time that the truck covered a quarter of a mile, Cole had progressed only one car length. The truck driver ignored the distress signal, ignored what his eyes must have told him, and ploughed ahead into the Chevrolet, hurling its three occupants into the snow and ice, inflicting certain injuries on all of them, which it is unnecessary to discuss here.

The Coles sued Lloyd and the Court below entered a nonsuit. The Coles appealed.

It was the opinion of the Trial Court that Harry Cole and his wife were guilty of contributory negligence. The lower Court said of Margaret Cole: "The plaintiff, Margaret E. Cole, knew that there were ruts

made invisible by action of a snow plow and that the car had settled into and was proceeding along the same in the center of the road. She was aware of her husband's efforts to leave the course of the ruts and to get over to the proper side of the road and that he continued moving unsuccessfully in those efforts after she first saw the truck approaching on its proper side of the road, when she was 'about half way between the line and the bottom of the hill.' During the interval between her first view of the truck and the collision she made no objection to the continued forward movement of the car, nor request of her husband to stop the car. Therefore, she, too, assumed the risk and tested the apparent danger of a collision without the remonstrance that a reasonably prudent person would have made. We are of opinion that she is precluded from recovery by her contributory negligence."

What the Court said was that the wife-plaintiff was required, as a matter of law, to protest to her husband and that, failing to do so, she was legally guilty of contributory negligence. But here we have a question of fact. The Jury could find in the particular circumstances of this case that if there is one thing a wife should do when her husband is at the wheel is to do what Mrs. Cole did, and that is to remain silent. The authority of a husband has undergone considerable shrinkage since Common Law days when he was accorded the respect and obeisance usually associated with that offered royalty. Married women's rights and the great freedom given and taken by children have made a householder something less than an absolute monarch. But the husband-father is still king at the wheel of his car. For a wife to criticize, order, and satirize her husband as he pilots the car in which she is a passenger; to issue ultimatums to him that if he does not desist his present course she will get out; to

command him to stop so she may leave him is not only a rather poor way to increase family harmony but it may accentuate the difficulties the husband is already encountering and accelerate the very happening of the accident he is with might and main endeavoring to avoid.

A wife passenger is not required to challenge a husband's control of a car when it is obvious to her that he knows, as well as she does, of an existing potential danger. In the case of *Azinger v. Pa. R. R. Co.*, 262 Pa. 242, both husband and wife were injured when the car in which he was the driver and she a passenger, was struck by a train at a railroad crossing. The Trial Court entered a nonsuit against both husband and wife. This Court reversed and ordered a new trial. On the subject of a passenger's duty we said: "None of the cases goes so far as to hold the passenger is bound to exercise the same degree of care in observing the roadway ahead of him as is required by the driver of the vehicle."

Then, speaking specifically to the point of whether the wife should have protested, this Court declared: "While it is true when she discovered the existence of the crossing she gave no warning, yet her husband had apparently discovered it at the same time, or previously, and an interference on her part would not only have been useless but might have tended to increase the danger."

We have practically the same situation here. Mrs. Cole knew that her husband was aware of the danger which confronted both of them. She knew that her husband was blowing the horn of his car and thereby seeking to prevent a collision. As was said in the *Azinger* case, "an interference on her part would not only have been useless but might have tended to increase the danger."

At any rate, it was for the jury, under appropriate instructions, to pass upon the charge that Mrs. Cole contributed to the happening of the accident and thus brought about the injuries of which she complains.

The same is true of the driver of the car, Harry S. Cole. In *Schneider v. Sheldon,* 380 Pa. 360, this Court said: "We have said over and over again that a compulsory nonsuit can be entered only in a clear case when all of the facts and inferences lead unerringly to but one conclusion. This is not such a case." Nor is this such a case. It would not be unreasonable for one to conclude that what Cole did was advisable under the circumstances. It was apparent to him that it was impossible to lift his wheels out of the icy grooves at the place where he then was. He had to decide whether to remain stationary, hoping that a St. Bernard dog, in the shape of a man or vehicle, might happen along to dig him out of the snow, or to proceed forward with caution, looking for a rut-less stretch of highway where he could get over to the right side of the road. Whether he chose a course that evinced lack of due care was a question for the jury to decide under instructions from the Court.

It was also a question of fact as to whether the defendant was negligent under the circumstances. In the case of *Schneider v. Sheldon,* above cited in another connection, the minor plaintiff was picking up beads at the edge of a highway, with one foot on the curb and the other in the street, when she was struck by the defendant's automobile. The Trial Court held that the defendant was without negligence. We reversed. Justice JONES (now Chief Justice), writing for the Court, said: "The primary factual issue is whether the evidence indicates that the child was in or along the highway for such a length of time before the accident oc-

curred that the defendant, in the exercise of due care, should have seen her and avoided the accident."

The fact that Cole in this case was not a minor does not alter the applicable law. According to Cole's testimony, Lloyd had a clear view for 150 feet of the situation in which Cole found himself. Cole also blew his horn to accentuate the evidence of his dilemma. It was a question for the jury to decide whether one in possession of his normal senses would not have seen Cole and have not concluded that unless Lloyd stopped or decelerated his approach a collision was inevitable since Cole was in such a position in the road that obviously Lloyd could not pass unimpededly.

In the case of *Capristo v. Gross*, 133 Pa. Superior Ct. 61, 66, the Superior Court quoted with approval from Huddy, Cyclopedia of Automobile Law, Vol. 3-4, pp. 187-188: "A driver on the right side of the road has a right to assume that a vehicle approaching on the wrong side will turn to the proper side in time to avoid a collision, *unless it is obvious that the driver of the latter vehicle does not intend to turn,* or is unconscious of the danger which is imminent, *in which case the former must take reasonable precautions to avoid a collision,* as where one side of the road is known to be obstructed." (Emphasis supplied).

In the case of *Cavey v. Bethlehem,* 331 Pa. 556, 558, this Court said: "What constitutes a reckless want of care on the part of the operator of a motor vehicle varies with the circumstances of the particular case. In the Restatement, Torts, section 500 (p. 1293), it is set forth that a person has acted in reckless disregard for the safety of others 'if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily

harm to the other but also involves a high degree of probability that substantial harm will result to him.'"
Reversed with a venire facias de novo.