222 Pa. Superior Ct. 537 (1972)
Strausser, Appellant,
v.
Strunk.
Superior Court of Pennsylvania.
Argued June 13, 1972.
September 26, 1972.
Before WRIGHT, P.J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.
*538 Phillip P. Santucci, with him Mervine, Brown, Newman & Santucci, for appellant.
Phillip H. Williams, for appellee.
OPINION PER CURIAM, September 26, 1972:
Judgment affirmed.
CONCURRING OPINION BY HOFFMAN, J.:
This appeal involves the question of whether the trial judge erred in sustaining appellee's objection to a question asked appellee on cross-examination for reason that it called for a conclusion by a witness.
On December 22, 1966, at or about 5:15 p.m. on King Street in East Stroudsburg, plaintiff's decedent, Ricky Lee Strausser, age 2 years and 10 months, was struck and killed by an automobile driven by the appellee, Louis Charles Strunk. Suit was commenced by decedent's personal representative on December 15, 1967. A trial was held before a jury on February 17, 1971, and a verdict was returned in favor of the defendant-appellee. Testimony during the trial disclosed that on the evening in question the weather was clear and the sky was dark. There was snow on the ground from a previous snowstorm, and snowbanks were present on each side of King Street, particularly in front of the Strausser residence facing the street. The testimony at trial established that just before the accident the decedent had been playing in front of the house in the vicinity of the snowbanks. Appellee testified that he was driving his motor vehicle with his lights on low beam, and that he did not see the child before, during or after the impact, which occurred at the right front fender of appellee's car. Decedent was unattended at the time of the accident, and there were no witnesses to the accident.
*539 On direct examination, appellee admitted hitting the child. The following excerpted portion of the cross-examination illustrates the conditions and circumstances leading up to the accident: "Q. [Plaintiff's counsel]: At what speed were you traveling? A. About 35 miles an hour. . . . Q. At the time you were operating your automobile on King Street, was it dark or getting dark? A. It was dark. . . . Q. The skies were cloudy? Is that a fair statement? A. I believe they were. Q. Can you describe the roadway? A. It had snow on it, snow patches and ice patches on the shoulder of the road. Q. What about the roadway itself, the travel portion? A. It was straight. Q. Was there anything on it? A. No, mostly clear. Q. It was mostly clear? A. Yes. . . . Q. You had your lights on? A. Yes. Q. Were they working properly? A. Yes, they were. Q. Is it true to say that King Street is a straight road, essentially, from about where Race Street intersects it? A. Yes. . . . Q. In that vicinity, headed toward Stokes Avenue, or to the right of the map as you look at it, would it be fair to say the road is straight and level? A. Yes, it would. . . . Q. Now in the same vicinity, Louis, there were no obstructions to your view or line of sight as you were traveling toward Stokes Avenue, is that correct? A. Yes. Q. Your car was in good working order? A. Yes, it was." Having developed all the facts necessary for the jury to ascertain the conditions under and the manner in which appellee was driving, plaintiff's counsel then posed the following question, after which the disputed colloquy took place: "Q. I ask you to answer this question in your own words, and think carefully before you answer it. You have described in your testimony here that you were on a straight stretch of road, that your lights were on, and there was no obstruction to your view. Can you tell me what reason you have for not having seen the *540 boy, if you know, why you didn't see him? MR. WILLIAMS: Your Honor, I object to that. THE COURT: We will sustain the objection. It calls for a conclusion by the witness." Although appellant contends that the trial court erred in sustaining appellee's objection, I believe the Court was correct in its ruling. Setting aside any alternative objections that the form of the question was either argumentative or that it was framed as a hypothetical question directed at a non-expert, it is evident that the question as posed invaded the province of the jury to determine ultimate issues.
The basic rule as to the admissibility of opinion evidence is that if all of the facts and circumstances upon which a witness bases his opinions are before a jury, and the jury is in as good a position as the witness to draw inferences and deductions from such facts and circumstances, then the opinion of the witness is inadmissible. Jamison v. Ardes, 408 Pa. 188, 182 A. 2d 497 (1962); Buehler v. Commonwealth, 407 Pa. 330, 180 A. 2d 898 (1962). Thus, whenever the circumstances can be fully and adequately described to the jury and are such that their bearing on the issue can be estimated by all persons without special knowledge or training, opinions of witnesses, whether expert or non-expert, are not admissible. Graham v. Pennsylvania Co., 139 Pa. 149, 21 A. 151 (1891); Delair v. McAdoo, 324 Pa. 392, 188 A. 181 (1936); Cobb v. Mutual Life Ins. Co., 151 Pa. Superior Ct. 654, 30 A. 2d 611 (1943).
The recent case of Starner v. Wirth, 440 Pa. 177, 269 A. 2d 674 (1970), poses the identical issues presented in this appeal. In that case, the litigating parties were involved in a motor vehicle accident. At a pretrial deposition of appellant, opposing counsel asked, "Do you feel you were traveling at an excessive rate of speed in view of the nature of the road, now that you look back?" In reliance on the stipulation made *541 by counsel to reserve all objections "except as to the form of the question" to the time of trial, no objection to the question was made, and Wirth answered, "I would say a little bit."
During cross-examination of Wirth at trial, he was asked, "Now, as you have reflected upon that kind of road, and the speed to which you were going, Mr. Wirth, would you tell us whether or not the speed at which you were going just prior to the accident, was or was not excessive?" Objection to this question on the ground that it called for a conclusion was sustained.
The Court stated at page 182 of the opinion: "In resolving this ultimate issue we must first decide if the opinion evidence rule, which excludes the opinion of third-party witnesses, applies with equal force to an adverse party. . . . [S]uch testimony is superfluous: `witnesses having no special skill, who have had personal observation of the matter in hand, may, as a result of their personal observation, have drawn inferences or made interpretations which the tribunal could equally well make from the same data of personal observation, if laid before them; and thus if it is possible to detail these data fully for the tribunal, the witness' own inferences are superfluous.' . . . There can be no doubt that this policy would make no distinction between witnesses or parties, adverse or otherwise nor would any differentiations be warranted by any of the erroneous theories sometimes advanced for the opinion evidence rule. VII Wigmore on Evidence, §§ 1919-22 (3d ed. 1940). The circumstances of the accident  several estimates of speed, the condition of the road, the time of day, etc.  were fully detailed to the jury, which was then in a position to decide if the speed was `excessive'. Any other testimony in this regard would be superfluous, and hence, excludable under the opinion evidence rule." (Emphasis added.)
*542 Appellee in the instant case had testified extensively and clearly on the facts and circumstances surrounding the accident. To ask appellee to speculate as to why he might not have seen plaintiff's decedent would not only have elicited a response of mere conjecture, but it would, for the same reasons as in Starner v. Wirth, supra, have been superfluous and an invasion of the province of the jury to determine ultimate issues. First Methodist Episcopal Church v. Bangor Gas Co., 388 Pa. 115, 130 A. 2d 517 (1957); see also Brodie v. Philadelphia Transportation Co., 415 Pa. 296, 203 A. 2d 657 (1964).
Appellant argues that even though the question may have called for a conclusion, appellee should have been permitted to answer it since the same question, asked at a pre-trial deposition, had not been objected to at that time.[1] Prior to the taking of the deposition, it appears that counsel had stipulated that objections would be reserved to trial. The Court in Starner v. Wirth, supra, rejected the same contention, saying, "[a]ssuming, arguendo, that the reason for the objection could have been removed if made at the time of the taking of this deposition, we believe the stipulation is controlling and gives full effect to the timely objection at trial. . . . It then follows that the exclusion of the admission was correct and the order granting a new trial based solely on the ground of this `improper' exclusion should be reversed." [at 440 Pa. 183]. For the *543 same reasons as stated in Starner, I believe that appellee's objection at trial was not only proper but timely.
Therefore, I concur in the result of the Majority affirming the ruling of the trial court.
SPAULDING, J., joins in this concurring opinion.
DISSENTING OPINION BY PACKEL, J.:
An automobile operated by the defendant struck and killed a two year old boy. The single issue in this case arises out of this colloquy at trial: "Q. [Plaintiff's Counsel]: Can you tell me what reason you have for not having seen the boy, if you know, why you didn't see him? Mr. Williams: Your Honor, I object to that. The Court: We will sustain the objection. It calls for a conclusion by the witness." The ruling of the court and its subsequent determination that the question called for an opinion were significant because, other than the defendant, there were no witnesses to the accident. In depositions the defendant had answered the exact same question as follows: "I can't say why I didn't see him. What I described to you, I should have seen him." The plaintiff seeks a new trial on the ground that the ruling by the court precluded the admission of testimony which might have caused the jury to return a verdict in favor of the plaintiff rather than for the defendant.
If the question at trial called for an opinion, the decision in Starner v. Wirth, 440 Pa. 177, 269 A. 2d 674 (1970), binding on this Court, would require an affirmance, notwithstanding the harsh criticism of the opinion rule.[1] The question there which was held objectionable *544 because its answer called for an opinion was: "`Now, as you have reflected upon that kind of road, and the speed to [sic] which you were going, Mr. Wirth, would you tell us whether or not the speed at which you were going just prior to the accident, was or was not excessive?'" Starner teaches that the underlying reason for the exclusion of testimony under the opinion rule is the superfluousness of such testimony (440 Pa. at 182, 269 A. 2d at 676-677): "An examination of the theories underlying this rule of evidence reveals the correct reason to be that such testimony is superfluous: `witnesses having no special skill, who have had personal observation of the matter in hand, may, as a result of their personal observation, have drawn inferences or made interpretations which the tribunal could equally well make from the same data of personal observation, if laid before them; and thus if it is possible to detail these data fully for the tribunal, the witness' own inferences are superfluous.' VII Wigmore on Evidence § 1918, at 13 (3d. ed. 1940). (Emphasis original.)"
There is no litmus test for fact versus opinion.[2] The *545 test to be applied should depend upon the reason for the rule. Was it superfluous to let the jury know what cause the defendant would give for not seeing the boy? The opinion evidence rule must not be mechanically applied so as to be "an obstacle to any intelligible account of what happens." United States v. Cotter, 60 F. 2d 689, 693 (2d Cir. 1932) (L. HAND, J.). The question must be tested by consideration of the possible answers rather than by the answer given in previous depositions.
The question, like almost any other question, could have been answered by an opinion but as posed it cannot be said that it necessarily called for an opinion. It could have been answered in many ways to give to the jury information which, under the circumstances of this case, was not otherwise available. The defendant could have answered that he was watching something on the other side of the road, that he fell asleep, that he bent down to light a cigarette, or that because of the structure of the car he could not see a small boy who suddenly came to the front right side of the car. Any one of these answers would have given the jury some additional data to aid them in making their determination.
Even an answer like that which the defendant gave at depositions would have given the jury additional data to weigh on the issue of negligence. The defendant's inability to give a reason is not a confession of fault. It was still for the jury to determine whether to believe him and to make its own inferences therefrom, or whether not to believe him and to infer that his lack of candor supported a finding of fault. Thus, any of the foregoing answers would not have been superfluous. In the absence of countervailing policy the rules of evidence *546 should not be applied to shut out information relevant to the performance of the factfinder's function. The court should not have prevented the jury from hearing the answer to the question.
The judgment should be reversed and the case remanded for a new trial.
CERCONE, J., joins in this dissent.
NOTES
[1] Appellee was asked the following question at deposition: "Q. [Plaintiff's counsel] Louis, again I ask you to answer in your own words, and think carefully, if you can answer this question. You told me that you were on a straight stretch of road, your lights were on and there was no obstruction to your view. Can you tell me what reason you have for not having seen the boy, if you know, why you didn't see him? A. [Appellee] I can't say why I didn't see him. What I described to you I should have seen him, but I never did."
[1] "The Opinion rule day by day exhibits its unpractical subtlety and its useless refinement of logic. Under this rule we accomplish little by enforcing it, and we should do no harm if we dispensed with it. We accomplish little, because, from the side on which the witness appears and from the form of the question, his answer, i.e., his opinion, may often be inferred. We should do no harm, because, even when the final opinion or inference is admitted, the inference amounts in force usually to nothing unless it appears to be solidly based on satisfactory data, the existence and quality of which we can always bring out, if desirable, on cross-examination . . . Add, finally, the utter impossibility of a consistent application of the rule, and the consequent uncertainty of the law, and we understand how much more it makes for injustice rather than justice. It has done more than any one rule of procedure to reduce our litigation towards a state of legalized gambling." VII Wigmore on Evidence § 1929, pp. 26, 27 (3d ed. 1940).
[2] "That the opinions of witnesses are in some cases admissible as evidence, even when not coming properly under the head of expert testimony, has long been established in practice. In several classes of questions, the line between the witness's judgment or opinion and his affirmation of a fact is so indistinct that it cannot be marked out in practice." Graham v. Pennsylvania Co., 139 Pa. 149, 158, 21 A. 151, 152 (1891).