393 A.2d 941

**Carol Ann LEWIS, Appellant (at No. 1021),**

v.

**Marion H. MELLOR, Appellant (at No. 1293),**

**and**

**Jacquelyn L. McCalla.**

Superior Court of Pennsylvania.

Argued Sept. 19, 1977.

Decided Oct. 27, 1978.

512

M. A. Bernstein, Philadelphia, with him Michael Shekmar, Philadelphia, for appellant at No. 1021, and appellee, Lewis, at No. 1293.

No appearance entered nor brief submitted for appellant at No. 1293, and appellee, Mellor, at No. 1021.

T. J. Mullaney, Norristown, with him Hugh O'Neill, Norristown, for appellee, McCalla.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This is an appeal from a judgment entered upon a jury verdict in an automobile accident case.

The accident occurred on January 27, 1967, at about 12:30 p. m., on Route 309 near the Norristown ramp. The highway was four lanes wide; each lane was 12 feet wide; the two northbound lanes were divided from the two southbound lanes by a concrete medial barrier. The road surface was wet; it was windy and raining. Jacquelyn McCalla was driving her automobile in the outside northbound lane; Carol Ann Lewis occupied the right front seat. Marion Mellor was driving her automobile in the outside southbound lane; it went out of control and crossed the medial barrier over onto the northbound traffic lanes, where it was struck one to two seconds later by Miss McCalla's automobile. As a result of this collision Miss Lewis suffered severe injuries, including brain damage.

Miss Lewis brought suit in trespass against both Miss McCalla and Mrs. Mellor. The jury found that Miss McCalla had not been negligent, but that Mrs. Mellor had been, and as to her, awarded Miss Lewis $350,000 in damages. Miss Lewis filed a motion for a new trial against Miss McCalla. The lower court denied the motion and this appeal resulted.[1]

As appellant, Miss Lewis argues that the trial judge erred: (1) in excluding certain testimony concerning the distance between the McCalla and Mellor automobiles; (2) in admitting opinion evidence regarding Miss McCalla's ability to avoid the Mellor automobile; (3) in refusing a requested point for charge, which undertook to define Miss McCalla's duty to avoid the Mellor automobile; and (4) in instructing the jury on the doctrine of sudden emergency.

1. Mrs. Mellor has also appealed but has filed no brief, instead joining in the brief filed by Miss Lewis. See Pa.R.A.P. 2137. Thus she has presented no argument that the jury verdict with respect to her was in error, and the judgment against her is not before us.

In this portion of her argument, appellant assigns as error two rulings by the trial judge. First: The trial judge excluded appellant's deposition testimony that when she shouted a warning to Miss McCalla, the distance between the McCalla and Mellor vehicles was "[f]rom about the front porch out there to Nell's house on the corner." Excluded with this testimony were two measurements of the distance between the front porch and Nell's house, made after the deposition, one by appellant's counsel and the other by her father. These measurements were 270 feet and 355 feet respectively.[2] Second: On direct examination Mrs. Mellor testified that when she began to cross the medial barrier, the distance between her automobile and Miss McCalla's was about "two city blocks." Appellant's counsel then proceeded to question Mrs. Mellor as follows:

BY MR. SHEKMAR:

Q. Can you tell us, when you referred to city blocks, where you refer to as city blocks? What city blocks are you referring to? You said city blocks. Now where are they? Take your time now.

A. If I were looking out here in Norristown, for instance, if I stood at the corner and looked down, it would be two blocks.

Q. Which corner would you stand on, Mrs. Mellor? We are in the courtroom now. Which corner would you stand on? Can you describe that better to us? Which corner would you stand on?

MR. BROWN: I object, Your Honor. Again its the same problem.

THE COURT: Objection sustained. She can estimate the distance; but city blocks are like the length of your nose; they vary.

MR. SHEKMAR:

2. The measurement of 270 feet was based on counsel pacing the distance as 90 paces, and estimating three feet per pace. The method used by appellant's father in making the 355 feet measurement does not appear in the record. (N.T. 53–54.)

Q. Well, can you give us some estimates in feet?

A. It was just—they were far away, but I could see the lights. That's all.

(N.T. 103–104)

■ In assigning the judge's rulings as error, appellant argues that testimony concerning the distance between the McCalla and Mellor automobiles was relevant to her case against Miss McCalla. As a general proposition, this argument may be accepted. However, the fact that testimony is relevant is not by itself enough to show that its exclusion was error.

■ The general rule is that "questions concerned with the admission or exclusion of evidence are within the sound discretion of the trial court and will be reversed on appeal only where a clear abuse of discretion exists." *Westerman v. Stout*, 232 Pa.Super. 195, 202, 335 A.2d 741, 745 (1975); *Patrick F. Dalton Company v. Trans-American Freight Lines, Inc.*, 219 Pa.Super. 223, 280 A.2d 635 (1971); *Cartmel v. Williams*, 207 Pa.Super. 144, 215 A.2d 282 (1965); *Wolfe v. Pickell*, 204 Pa.Super. 541, 205 A.2d 634 (1964). In exercising this discretion, the trial judge may refuse to admit evidence on the grounds that it may "confuse, mislead or prejudice the jury." *Keough v. Republic Fuel and Burner Co.*, 382 Pa. 593, 116 A.2d 671 (1959); *Thompson v. Amer. Steel & Wire Co.*, 317 Pa. 7, 175 A. 541 (1934). Here, the trial judge did not exclude testimony concerning distance altogether. As regards appellant's testimony, the judge excluded a general statement ("to Nell's house"), and two specific measurements of distance. We cannot say that this represented a clear abuse of discretion. Without the measurements, the general statement made no sense; the measurements, however, were in conflict, and to admit them might have confused or misled the jury. As regards Mrs. Mellor's testimony, the judge in fact did not exclude any testimony; rather, he stated that Mrs. Mellor could estimate the distance she meant by her reference to "two city blocks", but she then indicated that she could not offer an estimate. In any case, the judge's rulings did not prejudice appellant's

case because other evidence was admitted concerning the distance between the two automobiles, the speed of the automobiles, and the time between Mrs. Mellor's entry into the wrong lane and the collision. Included in this evidence was Mrs. Mellor's testimony, which has been quoted above, that the distance was "two city blocks" and that the lights on Miss McCalla's automobile were "far away". This testimony supported appellant's theory that Miss McCalla had been negligent in failing to avoid Mrs. Mellor's automobile.[3]

—2—

Eugene Farber, an eyewitness to the accident, testified on direct examination by Miss McCalla's counsel that he was a couple of hundred feet behind Miss McCalla's automobile (a Volkswagen) when the accident occurred, and that the time between the entrance of Mrs. Mellor's car onto the northbound lane and the collision was one or two seconds. He was then asked whether there appeared to be "an escape route available for the Volkswagen driver . . . a means of avoiding the collision?", and he answered:

"Well, I thought about that since the accident. I could have been involved. I came to a stop beyond the point where the accident took place, and although I did not brake as hard as I possibly could, I did brake pretty hard. As to whether there was some path that the driver could have taken to avoid the accident, I am not really sure. It may be that with a combination of luck and skill, there was some available route, but I would have hated to have been the driver of the VW, at that moment."

(N.T. 242)

Upon objection by appellant's counsel the trial judge excluded the last phrase ("but I would have hated to have been the driver of the VW, at that moment"), but refused to exclude the testimony that probably only with luck and skill could Miss McCalla have found another path or route. Miss

3. It should be noted that after receiving the favorable answer that the headlights were "far away", appellant's counsel ended this line of questioning.

McCalla's counsel then asked Mr. Farber what he meant by skill, and over objection by appellant's counsel, Mr. Farber answered:

> "Well, I would say, first, a very fast reaction time; and then secondly, an ability somehow to adjudge the path of the closing vehicle and to anticipate the point of impact at the intersection of the two paths, and to steer in such a way to be elsewhere. It is not obvious to me that that is something that would be immediately apparent to one— where to go."

(N.T. 244)[4]

Appellant argues that the trial judge erred in admitting Mr. Farber's testimony because it was improper opinion evidence.

The decision whether testimony constitutes fact or opinion may be difficult, for "[t]here is no litmus test for fact versus opinion." *Strausser v. Strunk*, 222 Pa.Super. 537, 544, 295 A.2d 168, 173 (1972) (PACKEL, J., dissenting); *see* 7 Wigmore, Evidence, § 1919 (Chadbourn rev. 1978). Often testimony that might be classified as opinion is nevertheless admitted almost as a matter of course. Statements such as "it made an awful racket," "the weather was miserable", "he looked drunk", are in a sense all opinions, but a little attention to our every day way of speaking will show that they are more accurately classified as shorthand, or compendious, statements of fact, based on personal observation. ("Well, when I say he looked drunk, what I mean is that he smelled of whiskey, his clothes were a mess, and he was swaying back and forth.") In such cases the experienced trial judge will admit the statement. To instruct the wit-

4. In the charge to the jury, the trial judge presented a summary of Mr. Farber's testimony, which stated in part: "I would have hated to have been the driver of the Volkswagen because I do not know what the combination of luck and skill might have accomplished. It all depends on fast reaction time and the ability to judge the path of an oncoming car." It will be observed that the judge thus referred to testimony he had excluded ("hated to have been"). However, appellant's counsel did not object to the judge's summary of Mr. Farber's testimony, and has not raised the correctness of the summary as an issue on appeal.

ness that he must "tell us only the facts, not your opinions," may confuse or intimidate the witness; the judge may therefore decide to let the witness express himself naturally, leaving it to counsel to question the witness further, if elaboration or clarification is thought desirable. *See* McCormick, Handbook on Evidence, § 11 (West ed. 1972); *see also Wilson v. Penna. R. Co.*, 421 Pa. 419, 219 A.2d 666 (1966) (in close case trial judge's discretion respected); *Holton v. Gibson*, 402 Pa. 37, 116 A.2d 4 (1960) (testimony that automobile "increased" speed was fact not opinion).

Here, it is arguable that Mr. Farber's statements concerning skill and luck and the possibility of avoiding the collision should be regarded as a shorthand description of the action of the two automobiles as he saw them. However, while we recognize that the line between fact and opinion is imprecise, we believe that the fairer conclusion is that the testimony was an expression of opinion, for while it arose from, and implied, what the witness had seen, it was expressed in terms of the witness's estimate of possibilities.

Having held that Mr. Farber's testimony was opinion, we must consider the often-cited proposition, or "opinion evidence rule", to the effect that opinion testimony by a lay witness (which is what Mr. Farber was), as distinguished from an expert witness, should be excluded because "witnesses generally must give facts and not their inferences, conclusions or opinions." McCormick, *supra*, § 11; *see Graham v. Penna. R. Co.*, 139 Pa. 149, 21 A. 151 (1891). Sometimes this means no more than that a lay witness must speak from personal knowledge (the witness must describe what he saw, heard, felt, tasted, smelled). *See, e. g., Brodie v. Phila. Trans. Co.*, 415 Pa. 296, 203 A.2d 657 (1964) (lack of personal observation of incident by witness makes testimony excludible as opinion); McCormick, *supra*, §§ 10, 11. So understood, there can be no quarrel with the opinion evidence rule;[5] it does not, however, concern us here, for Mr. Farber was speaking from personal knowledge, as one who

5. This point is discussed further *infra*, in considering the Federal Rules of Evidence.

had been an eye witness to the accident. What does concern us are two corollary, or subsidiary, rules that have sometimes been expressed in the cases. One of these is that opinion testimony should be excluded when it is "unnecessary"; the other, that opinion testimony should be excluded when it goes to "the ultimate issue." *See Starner v. Wirth,* 440 Pa. 177, 269 A.2d 674 (1970) (unnecessary); *Della Porta v. Penna. R. Co.,* 370 Pa. 593, 88 A.2d 911 (1952) (unnecessary); *Gulf Oil Corp. v. Philadelphia,* 357 Pa. 101, 53 A.2d 250 (1947) (ultimate issue); *Graham v. Penna. R. Co., supra;* (unnecessary); *North Penna. R. Co. v. Kirk,* 90 Pa. 15 (1897) (ultimate issue); *Taylor v. Fardink,* 231 Pa.Super. 259, 331 A.2d 797 (1974) (unnecessary and ultimate issue opinion).[6] The necessity rule requires exclusion unless an opinion is necessary to supplement an inadequate factual description. *See Taylor v. Fardink, supra.*[7] An opinion on an ultimate issue is said to invade the province of the jury and usurp its function. *See Gulf Oil Corp. v. Philadelphia, supra; Taylor v. Fardink, supra.*[8]

**6.** It must be noted that if the lay opinion is unnecessary it is excludible regardless of whether it treats an "ultimate issue." In some cases the courts apparently have held the opinion excludible both because of lack of necessity and because of the bar against ultimate issue opinion. *See e. g., Gulf Oil Corp. v. Philadelphia, supra; Taylor v. Fardink, supra.* In spite of the fact that lack of necessity alone is sufficient for exclusion, in these cases the grounds for exclusion was somehow buttressed by the "ultimate issue" rule. While we speak in this opinion of two separate rules, it should be noted that lack of necessity seems to be the major basis for excluding lay opinion.

**7.** In *Taylor* this court stated:
> Where mere descriptive language is inadequate to convey to the jury the precise facts of a case or their bearing on the issues of the case, a witness may supplement his descriptions by his opinion; but where the circumstances are such that they can be fully and accurately described to the jury, and persons without special knowledge and training are capable of estimating their bearing on the issues, opinions of witnesses, whether expert or otherwise, are inadmissible.

231 Pa.Super. at 262, 331 A.2d at 799, *citing Della Porta v. Penna. R. Co., supra. See also Graham v. Penna. R. Co., supra.*

**8.** Sometimes an opinion on an ultimate issue will be admitted as a necessary part of the plaintiff's case. Thus in medical malpractice actions expert testimony on the standard of care and causation are required. *See Collins v. Hand,* 431 Pa. 378, 246 A.2d 398 (1968).

Here, Mr. Farber's testimony would seem proscribed by both the necessity rule and the ultimate issue rule. The evidence including the estimate of the speed of the automobiles, the condition of the highway, and the time available to Miss McCalla to react to the intrusion of Mrs. Mellor's automobile, presented the jury with sufficient facts to enable it to determine the possibilities open to Miss McCalla. Thus Mr. Farber's opinion was not necessary to supplement an inadequate factual description. Moreover, while there is no *per se* test for determining what is "an opinion on an ultimate issue", an opinion upon the possibilities open to a party in a negligence case has been classified as an opinion on the ultimate issue of negligence. *See Taylor v. Fardink, supra* ("I didn't see what else she could have done").

Despite these conclusions, however, we shall not disturb the judgment of the lower court, for we are not convinced that reversible error occurred.

The opinion evidence rule in general and the necessity and ultimate issue rules in particular have been subjected to sustained and searching criticism. *See* McCormick, *supra,* §§ 11, 12; 7 Wigmore, *supra,* §§ 1917–1919. Thus it has been noted that the necessity rule has proved too nebulous for satisfactory or consistent application. McCormick, *supra,* § 11; Spies, *Opinion Evidence,* 15 Ark.L.Rev. 105, 106–110 (1960). In addition, it may be observed there seems to be little logic in setting aside a jury verdict and ordering a new trial merely because the jury has heard something "unnecessary". Similarly the ultimate issue rule has been criticized because of the inherent difficulty in deciding what constitutes an ultimate issue in the particular case. *See* Note, *Opinion Testimony Invading the Province of the Jury,* 20 U.Cinn.L.Rev. 484, 486–88 (1951). Moreover, the rationale for the rule, that ultimate issue opinion should be excluded because it "usurps" the jury's function, has been labelled "mere empty rhetoric", because no witness can usurp the jury's function even if he wants to. 7 Wigmore, *supra,* § 1920; Note, *supra,* at 486; *see Grismore v. Consolidated Products,* 232 Iowa 328, 5 N.W.2d 646 (1942). If the word

"usurp" is put aside, and the ultimate issue rule considered as prohibiting opinions that might lead the jury to forgo an independent analysis of the case, still the question remains whether any ultimate issue lay opinion does have such an effect. The opinion cannot prevent an independent jury decision; the jury is still free to decide. Moreover, it is at best doubtful that a jury is influenced more by opinion testimony on the ultimate issue than it is by fact testimony on the ultimate issue; yet we do not exclude fact testimony on the ultimate issue. See Note, *supra*, at 485–87. If a jury reaches the same conclusion as that offered by the lay witness, it seems more likely that the jury interpreted the facts in the same way and accepted the witness's opinion because it fit the facts, than that it failed to make an independent analysis of the facts merely because it happened to hear an opinion. Where the opinion is not supported by the facts, that may be pointed out by cross-examination and argument, and the jury persuaded to reject the opinion. *See* Ladd, *Expert Testimony,* 5 Vand.L.Rev. 414, 415–17 (1952); Note, *supra,* at 486–87.[9] Thus the ultimate issue rule is predicated more upon a distrust of jurors than upon a realistic appraisal of the effect of admitting the opinion. Such an attitude does not constitute a proper basis for an evidentiary rule. *See* Weinstein, *The Ohio and Federal Rules of Evidence,* 6 Capitol U.L.Rev. 517, 520–21 (1977). Moreover, any rule that requires reversal, simply because the opinion was "unnecessary" or because it went to the "ultimate issue", is too broad, for it assumes the existence of reversible prejudice in every case.

Modern codifications of evidentiary rules reject both the necessity rule and the ultimate issue rule. The Federal Rules of Evidence are an especially notable example of this development. Rule 701 provides:

**9.** The ability to cross-examine an opinion witness demonstrates a significant difference between the opinion rule and the hearsay rule. A major basis for excluding hearsay is the inability of counsel to test the statement of the declarant by cross-examination. *See Carswell v. SEPTA,* 259 Pa.Super. 167, 393 A.2d 770 (1978).

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

And Rule 704 provides:

> Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

The reasoning underlying the Federal Rules is that the trial judge should be given discretion to decide whether lay opinion based on personal knowledge may be helpful to the jury. *See United States v. Milton,* 555 F.2d 1198 (5th Cir. 1977); *United States v. Smith,* 550 F.2d 277 (5th Cir. 1977); *United States v. Robinson,* 544 F.2d 110 (2d Cir. 1976); *United States v. Murray,* 523 F.2d 489, 491 n. 1 (8th Cir. 1975); *Arcement v. Southern Pacific Transp. Co.,* 517 F.2d 729 (5th Cir. 1975). Difficult questions of whether the opinion is necessary or whether it involves an ultimate issue are thus avoided. *See* Fed.R.Evid. Advisory Committee Notes to Rules 701–704. Instead, the trial judge may make a decision based upon a consideration of the helpfulness of the testimony tempered by a consideration of whether its admission will cause confusion or prejudice. *See* Advisory Committee Notes to Rule 704; *see also* Fed.R.Evid. 403. The judge's decision *either* to exclude *or* to admit the opinion will be overturned only where there is prejudicial error. *See United States v. Milton, supra* (not prejudicial error to admit lay opinion that defendant understood CETA requirements); *Arcement v. Southern Pacific Transp. Co., supra* (lay opinion concerning conduct could have been admitted under Rule 701 but exclusion not prejudicial error); *see generally* Smith & Henley, *Opinion Evidence: An Analysis of The New Federal Rules and Current Washington Law,* 11 Gonzaga L.Rev. 692, 703–706 (1977); Symposium, *The Federal Rules of Evidence,* 36 La.L.Rev. 59, 124–27 (1975).

Arkansas, California, Florida, Kansas, Maine, Minnesota, Nebraska, Nevada, New Jersey, New Mexico, Ohio and Wisconsin [10] have all either adopted codifications similar to the Federal Rules with respect to opinion evidence or have adopted the language of Rules 701 and 704 verbatim. And at least one other jurisdiction allows lay opinion on the ultimate issue by case law. *Rieth-Riley Construction Co., Inc. v. McCarrell,* Ind., 325 N.E.2d 844 (1975).[11]

 We believe that the Federal Rules represent the best approach to the opinion evidence problem. We therefore now adopt that approach as our own. In taking this action, we are conscious of moving beyond the present cases. It is of the essence of the law, however, that it evolves in response to experience and thoughtful criticism; of no aspect of the law is this more true than of the law of evidence. Our action, moreover, is hardly radical or far reaching. The witness stand is not now opened to witnesses who would act like the oath-swearers of the early centuries; nor do we intend that our trials become parades of influential opinion givers. *See* Advisory Committee Notes to Rule 704. Personal knowledge remains a prerequisite to the admissibility of an expression of lay opinion. We do no more than abandon rules that have proved difficult both of articulation and application. If the trial judge decides that the proffered opinion would not be helpful, or even if helpful, would

**10.** *See* Ark.Stat.Ann. § 28–101 *et seq.* (Uniform Rules of Evidence 1976); Calif.Evid.Code § 800 (1976); Fla.Evid.Code § 90.701 (1978); Kansas Code of Civ.Pro. § 60–456 (1977); Me.Rev.Stat.Ann. tit. 16 § 1 *et seq.* (Supp. 1975); Minn.R.Evid. (Effective July 1, 1977); Neb.Rev.Stat. § 27–101 *et seq.* (1975); Nev.Rev.Stat. § 47.020 *et seq.* (1973); New Jersey Evid. Rule 56(1) (1975); N.M.Stat.Ann. § 20–4–101 *et seq.* (1976); Ohio R.Evid. 701 (1978); Wis.Stat.Ann. § 901.01 *et seq.* (1975). It should be noted that the Florida rule with respect to admissibility of lay opinion seems to be a little stricter than Federal Rule 701.

**11.** In *Rieth-Riley,* where an eyewitness was allowed to testify that he could not have avoided the accident if he had been driving the plaintiff's car, the Supreme Court of Indiana found no prejudicial error and repudiated the opinion evidence doctrine. *See also Palmer v. State,* Ind., 363 N.E.2d 1245 (1977) (opinion evidence admissible; relies on *Rieth-Riley* ).

confuse, mislead, or prejudice the jury, or would waste time, he may exclude it. *See* Advisory Committee Notes to Rule 704. On appeal, the judge's discretion in this regard will be respected, and reversal will occur only in those cases where the discretion has been clearly abused, and actual prejudice has occurred.

■ Applying this rule to the present case, we note that Mr. Farber's testimony was based on his personal observation and that while not necessary, it could have been helpful to the jury in understanding the precise situation faced by Miss McCalla. Even if helpfulness be disputed, we should be reluctant to hold the admission of the testimony more than harmless error, absent evidence that it caused prejudice. Yet appellant has not demonstrated any prejudice; as has been discussed, the mere fact that the opinion concerns an ultimate issue is insufficient. Moreover, our own review of the record discloses no prejudice. There is no reason to suppose that Mr. Farber had any influence over the jury, except that the jury may have believed his fact testimony and may have accepted his opinion as conforming to the facts. Nor is this a case where the opinion was confusing or represented an attempt to define a party's conduct with respect to a difficult legal concept; Mr. Farber merely commented upon the situation faced by Miss McCalla, as he saw the situation. The trial judge excluded part of his comment, and might have excluded all of it; but we cannot say that the judge's admission of part of the comment represented a clear abuse of discretion, resulting in prejudice to appellant's case.

—3—

■ Appellant requested the trial judge to charge as follows:

With respect to Defendant McCalla, Plaintiff claims that she took no reasonable precaution to avoid the collision.

With respect to that Defendant the law is that:

"A driver on the right side of the road has a right to assume that a vehicle approaching on the wrong side will turn to the proper side in time to avoid a collision, unless it is obvious that the driver of the latter vehicle does not intend to turn . . . in which case the former must take reasonable precautions to avoid a collision, as where one side of the road is known to be obstructed." *Cole v. Lloyd,* 392 Pa. 33, 139 A.2d 641 (1958).

Further, it has been said that no driver has a right to continue his car in motion if such motion makes injury to another car or person inevitable or reasonably probable, provided, of course, that such car is under control. The duty of a driver of a motor vehicle to have his car under control at all times means having it under such control that it can be stopped before doing injury to any person in any situation that is reasonably likely to arise under the circumstances.

(N.T. 283)

The trial judge refused the request, and instead gave a general instruction concerning negligence to the effect that Miss McCalla had a duty to exercise due care under the circumstances. (N.T. 289)

In *Abbott v. Steel City Piping Co.,* 437 Pa. 412, 263 A.2d 881 (1970), the appellant assigned error in a general instruction concerning negligence, arguing that the jury should have been instructed as to the varying legal duties of a contractor, a subcontractor, an independent contractor, and an architect. The Supreme Court found this argument to be without merit, holding that even a broad general charge on the doctrine of negligence is sufficient if it sufficiently delineates the issues to the jury. *Id.,* 437 Pa. at 417–18, 263 A.2d at 881. *See also Vaughn v. Phila. Transp. Co.,* 417 Pa. 464, 209 A.2d 279 (1965); *Smith v. Clark,* 411 Pa. 142, 190 A.2d 441 (1963); *James v. Ferguson,* 401 Pa. 92, 162 A.2d 690 (1960).

The doctrine announced in *Cole v. Lloyd, supra,* on which appellant relies, is merely that a driver must act reasonably to avoid colliding with an oncoming vehicle that intrudes

into his traffic lane. It thus involves nothing more than an application of the general standard of reasonable care to a specific situation. As such, under *Abbott,* it was adequately covered by the court's general instruction on negligence.

—4—

 In instructing the jury concerning the doctrine of sudden emergency, the trial judge said:

It is the law that a driver, if confronted with a sudden emergency not of his or her making, is not guilty of negligence just because it may appear later that if she or he acted differently an accident may have been avoided. All that is required is an honest exercise of judgment, even if not the best judgment under the circumstances, when faced with a sudden emergency not of one's own making. When one finds one's self in danger which is not the result of his own negligence, he is not responsible if he makes a mistake in judgment in getting out, even if it had been better if he had time to deliberate.

(N.T. 312–313)

The fact that Miss McCalla was suddenly confronted by Mrs. Mellor's swerving automobile going in the wrong direction in her traffic lane, and the further fact that the collision occurred within one or two seconds thereafter, indicated that the sudden emergency doctrine might apply. *See generally, Haines v. Dulaney,* 424 Pa. 608, 227 A.2d 625 (1967); *Fleischman v. Reading,* 388 Pa. 183, 130 A.2d 429 (1957). Appellant argues, however, that even so, the doctrine should not apply unless the person invoking it testifies concerning the emergency and his reaction to it.[12] Since Miss McCalla did not testify concerning the accident, because her mind was "a blank", appellant urges that the doctrine be denied her.

12. Implicit in appellant's argument is another argument the gist of which is that since the sudden emergency doctrine excuses conduct in reaction to emergency, the party invoking the doctrine must prove certain conduct, which appellant would limit to braking or swerving. However, a party confronted by a sudden emergency may react in a variety of ways, which may include speeding up, freezing in place, or continuing forward.

This argument is without merit. There is no requirement in the sudden emergency doctrine that any person testify concerning the party's reaction to the emergency, and we find no reason to impose the requirement. Moreover, in *Wilson v. Consolidated Dressed Beef Co.,* 295 Pa. 168, 145 A. 81 (1929), the Supreme Court applied the doctrine of sudden emergency to a case where the driver's mind was a "blank" concerning the collision.

Affirmed.

WATKINS, former President Judge, JACOBS, President Judge, and HOFFMAN and PRICE, JJ., did not participate in the consideration or decision of this case.