531 A.2d 420

**Patrick B. KOZAK and Mary Ann Kozak, Appellants,**

**v.**

**Wayne STRUTH and McKeesport Area School District, Appellees.**

Supreme Court of Pennsylvania.

Argued March 13, 1987.

Decided Sept. 21, 1987.

Michael Hahalyak, Pittsburgh, for appellants.

Richard Mills, Louis C. Long, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, for appellees.

Before LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

Appellants, Patrick B. Kozak and Mary Ann Kozak, appeal by allowance a Superior Court order which affirmed Allegheny County Common Pleas' judgment on a jury verdict for appellee Wayne Struth. They argue that the trial court abused its discretion in permitting appellee's expert witness to comment on the totality of the evidence. Because an expert may not usurp the jury function by weighing and testing the credibility of other witnesses, we hold, under all the circumstances presented by this record, that admission of the particular expert testimony given was an abuse of the trial court's discretion. We therefore reverse the order of Superior Court and remand to Common Pleas for a new trial.

On February 3, 1975, appellant Patrick B. Kozak, while enrolled in a swimming class at McKeesport Area High School, attempted to dive into the shallow end of the school's swimming pool. Patrick, then 16 years of age, struck his head on the bottom of the pool, severing his spinal cord and leaving him paralyzed. He and his mother filed an action in trespass against the instructor in charge of the swimming class, appellee Wayne Struth. Struth then joined the McKeesport Area School District as an additional defendant. At the close of the evidence, the school district's motion for a compulsory nonsuit was granted. The jury then returned a verdict for appellee Struth and against the appellants. Superior Court affirmed. 348 Pa.Super. 637, 501 A.2d 295.

■ At the trial, appellee offered the expert testimony of Carl Peterson to rebut appellants' assertion that appellee was negligent in his supervision and instruction of the swim class. Following direct and cross-examination on Dr. Peterson's qualifications as an expert, appellee's counsel engaged his expert in the following colloquy:

BY MR. MILLS:

Q. Doctor Peterson, based upon the evidence that you have heard here in the courtroom, *including the testimony of all the witnesses* and the testimony that has been read to the jury, previously taken, and based upon your knowledge and understanding of the occurrence in question, do you have an opinion as to the capability of Wayne Struth as a water safety instructor.

MR. HAHALYAK: I continue the objection, your Honor.

THE COURT: Objection overruled.

THE WITNESS: Yes, I do.

BY MR. MILLS:

Q. All right.

A. In the first place—May I elaborate on my answer?

Q. What is that opinion?

A. He is a graduate of a reputable undergraduate school. I know personally the people who have been involved in certifying him as a teacher, Miss Kepfel at Slippery Rock, and Robert Evans. I work with most of those people.

And I give the most respect for the kind of people that they serve by.

. . . .

Q. *Again based solely upon the evidence that has been presented here in the courtroom,* do you have an opinion with respect to the conduct of Wayne Struth at the time of the incident in question?

A. Yes, I do.

Q. And what is that opinion?

A. I believe that he acted as I would have under the same circumstances. It is standard procedure the way he conducted his class.

Q. *Based upon the evidence that has been presented here in the courtroom,* do you have an opinion as to the cause of the accident in question.

MR. HAHALYAK: Objected to, as a continuing objection.

THE WITNESS: Yes, I do.

BY MR. MILLS:

Q. What is that opinion?

A. I believe it was entirely a matter of poor judgment or no judgment on the part of the plaintiff.

In all athletics, and all of us have experienced injury in daily living, and after we are injured, we say "I didn't think."

And I believe that this is the situation in this case. N.T. May 19, 1982 at 410–415 (emphasis added). Responding to these questions, the witness evaluated the totality of the evidence and also introduced extraneous and irrelevant factors. Moreover, in giving his final opinion on due care and causation, the witness directly evaluated the victim's credibility on his knowledge or appreciation of the risky nature of his conduct.[1]

When the jury is confronted with factual issues whose resolution requires knowledge beyond the ken of the ordinary layman a need for the employment of an expert arises. *Reardon v. Meehan,* 424 Pa. 460, 465, 227 A.2d 667, 670 (1967); *Commonwealth v. Leslie,* 424 Pa. 331, 334–35, 227 A.2d 900, 903 (1967). Traditionally, the opinion testimony of an expert must be narrowly limited to evidence of which he has personal knowledge, which is uncontradicted on the record or which is proffered on an assumed state of facts reasonably shown by the record. *Houston v. Canon Bowl, Inc.,* 443 Pa. 383, 385, 278 A.2d 908, 910 (1971); *Battistone v. Benedetti,* 385 Pa. 163, 170, 122 A.2d 536, 539 (1956); *Jackson v. United States Pipe Line Co.,* 325 Pa. 436, 440, 191 A. 165, 166 (1937).

---

**1.** Appellee contends, and Superior Court held, that the appellants failed to preserve this issue for appellate review. Our examination of the record reveals that appellants' counsel lodged a standing objection to appellee's expert's opinion which was expressed in the absence of a hypothetical question. At sidebar, Mr. Hahalyak, counsel for the appellants, stated: "He has failed in my opinion by reason of this to permit a proper basis for the recommended opinion." N.T. May 19, 1982 at 409. Appellants' post-trial motions included specific references to the improper questioning of the expert. R.R. at 344a–345a.

The complexity of issues before our trial courts increasingly requires expert testimony. The increased use and importance of such testimony requires careful examination of the rules governing its admission to prevent invasion of the jury's function by experts whose frequently conflicting opinions leave the jury incapable of rationally examining them except on the basis of the expert's appearance, manner or verbal skills. The proper function of an expert is to "instruct the court and jury in matters so far removed from the ordinary pursuits of life, that accurate knowledge of them can only be acquired by a continued study and experience." *Commonwealth v. Fugmann*, 330 Pa. 4, 26, 198 A. 99, 110 (1938) (*quoting Coyle v. Commonwealth*, 104 Pa. 117, 131 (1883)). *See also Brueckner v. Pittsburgh*, 368 Pa. 554, 558, 84 A.2d 197, 199 (1951). In Pennsylvania, experts have not been permitted to speak generally to the ultimate issue nor to give an opinion based on conflicting evidence without specifying which version they accept. These principles have been designed to permit the expert to enlighten the jury with his special skill and knowledge but leave the determination of the ultimate issue for the jury after it evaluates credibility.

In attempting to control the examination of experts, Pennsylvania courts have long used and recognized the hypothetical question as an aid in insuring that the role of the expert is kept properly separate from that of the jury. Moreover, experts are subject to the usual rules of relevance in giving their opinions and cannot base them on extraneous irrelevant factors not properly in evidence.

For over a century, we have consistently held that an expert's comment on the totality of the evidence, where the evidence is in conflict, improperly impinges upon the jury's exclusive province. In 1885, Mr. Justice Green declared that "[t]he [expert] witness can not be asked to state his opinion upon the whole case, because that necessarily includes the determination of what are the facts, and this can only be done by the jury." *Yardley v. Cuthbertson*, 108 Pa. 395, 450, 1 A. 765, 773 (1885). Following *Yardley*, a

litany of decisions have reiterated the principle that an expert cannot weigh contradictory evidence and place his imprimatur upon a particular version. *Battistone, supra,* 385 Pa. at 169, 122 A.2d at 539; *Commonwealth v. Marshall,* 287 Pa. 512, 526, 135 A. 301, 306 (1926); *Wissinger v. Valley Smokeless Coal Co.,* 271 Pa. 566, 571, 115 A. 880, 881–82 (1922); *McDyer v. Eastern Pennsylvania Ry. Co.,* 227 Pa. 641, 647, 76 A. 841, 843 (1910); *Gillman v. Media,* 224 Pa. 267, 274, 73 A. 342, 344 (1909). Our general commitment to the sanctity of the jury's role as factfinder was recently re-emphasized in *Commonwealth v. Seese,* 512 Pa. 439, 517 A.2d 920 (1986). *See also Colosimo v. Pennsylvania Elec. Co.,* 513 Pa. 155, 518 A.2d 1206 (1986).

We are aware that the drafters of the Federal Rules of Evidence have eliminated the necessity of using the hypothetical question by allowing an expert to testify to his opinion without elucidating underlying factual assumptions. *See* Fed.R.Evid. 705. This practice is also advocated by the text writers. *See, e.g.,* McCormick on Evidence § 16 (E. Cleary 3d ed. 1984); 2 Wigmore, *Evidence* § 686 (Chadbourn rev. 1979). They believe that the proponent's adversary can protect his client by competent cross-examination exploring facts or data underlying the opinion. Appellee urges us to adopt this theory. We have declined, believing that requiring the proponent of an expert opinion to clarify for the jury the assumptions upon which the opinion is based avoids planting in the juror's mind a general statement likely to remain with him in the jury room when the disputed details are lost. Relying on cross-examination to illuminate the underlying assumptions may further confuse jurors already struggling to follow complex testimony. Additionally, total reliance on cross-examination permits the party propounding the expert's evidence to introduce it generally in a conclusory manner without relation to the record and casts the whole burden of disqualifying it on the opponent. This is contrary to the usual practice of allocating to the proponent of evidence, as the party with the laboring oar, the duty of laying a logically understandable foundation.

The problems this can create are illustrated by this record to which we now return. The gravamen of appellants' lawsuit is that appellee was negligent in his instruction and supervision of the swim class. Appellant Patrick Kozak testified that he knew he was diving into the shallow end of the swimming pool, that he intended to make a racing dive but altered his diving form so as to avoid hitting students already in the pool. N.T. May 12, 1982 at 41–43. Patrick also testified that he never received any formal instructions on diving techniques. *Id.* 47, 54, 55. The expert's final opinion that Patrick just did not think directly attacks the credibility of this testimony. Patrick's testimony regarding the improper technique employed to enter the pool was buttressed by a fellow student, Thomas Sabo. N.T. May 13, 1982 at 107–114. Appellee, Wayne Struth, testified that Patrick's dive was "excellent." N.T. May 19, 1982 at 353. Carl Peterson, appellee's expert, was then called upon to render his opinion as to the appellee's standard of care in managing the class. Counsel for the appellee, as quoted *supra,* asked for his expert to comment on the appellee's conduct based upon the totality of the evidence, even though it was contradictory.

In rendering his opinion that Patrick was careless and did not think, appellee's expert had to assume that Patrick knew the proper technique of entering the pool and that the class was properly supervised before concluding that Mr. Struth exercised a proper standard of care. Counsel's examination of the expert not only required the expert to draw informed inferences from the record, but also to reject, without saying so, the credibility of testimony concerning a particular version of the controverted facts.

■ The record also shows that the opinions given were based at least in part on irrelevant and prejudicial facts which were not and could not otherwise have been put into evidence. When asked for his opinion of appellee's "capability ... as a water instructor" appellee's expert answered over objection:

A. He is a graduate of a reputable undergraduate school. I know personally the people who have been involved in certifying him as a teacher, Miss Kepfel at Slippery Rock, and Robert Evans. I work with most of those people.

And I give the most respect for the kind of people that they serve by.

N.T., May 19, 1982 at 411. The basic maxim of relevance, *res inter alia acta,* is accepted in this Commonwealth. The question and the answer quoted above conflict with that maxim in a way likely to prejudice appellants' case in the eyes of the jury. The expert's respect for appellee's college and its faculty is not relevant to appellee's due care on the occasion in issue and its relation to the accident which paralyzed Patrick Kozak.

█ Finally, the expert's answers to questions which do relate to appellee's due care and the cause of the injury come dangerously close to improper testimonial opinion on the ultimate facts of due care and causation. Such expert testimony must be carefully scrutinized because issues of ultimate fact, especially those of credibility, are for the jury, not the expert. *Gulf Oil Corp. v. Philadelphia,* 357 Pa. 101, 53 A.2d 250 (1947); *Lewis v. Mellor,* 259 Pa. Superior Ct. 509, 393 A.2d 941 (1978) (*en banc*). In *Lewis,* Superior Court approved the principles set out in Fed.R. Evid. 704, which allows a witness to testify to the ultimate issue to be decided by the trier of fact. The *Lewis* opinion involved a lay witness. Subsequent Superior Court panels have extended the holding to expert testimony. *See, e.g., Bessemer Stores, Inc. v. Reed Shaw Stenhouse, Inc.,* 344 Pa. Superior Ct. 218, 496 A.2d 762 (1985); *Swartz v. General Electric Co.,* 327 Pa. Superior Ct. 58, 474 A.2d 1172 (1984). The Superior Court rule, allowing a witness to testify to the ultimate issue, is limited to those instances where the admission will not cause confusion or prejudice. *Mellor, supra,* 259 Pa.Superior Ct. at 522, 393 A.2d at 949; *Swartz, supra,* 327 Pa.Superior Ct. at 71, 474 A.2d at 1178. Here, the testimony which approaches expert opinion on the

ultimate issue involves an unstated evaluation of credibility based arguably on irrelevant factors. Had the expert commented on the question of due care by setting forth the proper procedures, this problem would not have arisen. *See supra* at 421–422. However, in dealing with causation, he went on to state the accident was in fact wholly caused by Patrick's failure to think. This presented the jury with a confusing mixture of fact and opinion which directly attacked Patrick's credibility on an ultimate issue. The witness's unstated implication that the appellee was more credible was arguably based on reasons, *e.g.*, appellee's distinguished schooling, which had no relevance to the case at hand. Considering all these circumstances, we conclude that the trial judge did abuse his discretion by permitting the opinion evidence given on this record.[2]

The combination of problems posed by the instant examination of appellee's expert requires a new trial. Accordingly, the order of Superior Court is reversed and the record is remanded to the Court of Common Pleas of Allegheny County for a new trial.

NIX, C.J., did not participate in the consideration or decision of this case.

---

**2.** We have carefully examined the other issues proffered by appellants and find them, in light of today's holding, of no consequence.