## Mizenko v. McDonald's Restaurants of Pennsylvania, Inc.

478

C.P. of Carbon County, No. 08-0574.

*Michael J. Cefalo, James J. Albert* and *Karl J. Kwak,* for plaintiff.

*Joseph J. Bottiglieri, Mark A. Lockett* and *Michael L. Ozalas,* for defendant.

NANOVIC, *P.J.,* April 19, 2012—Before us is plaintiff's post-trial motion following a jury verdict in favor of defendant. In his motion, plaintiff claims we erred in what we instructed the jury (i.e., the standard of care applicable to children) and in what we failed to

instruct (i.e., spoliation), and further erred in excluding expert testimony which plaintiff sought to present and in denying plaintiff's request to call certain former employees of defendant as of cross-examination. Each of these issues will be discussed in the order advanced by plaintiff.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 30, 2005, the plaintiff, Eugene Mizenko ("Mizenko"), and his friend, Stephen O'Firer, pulled into the parking lot of a McDonald's restaurant located along Blakeslee Boulevard in Lehighton, Carbon County, Pennsylvania, to ask directions to a destination they were going to in neighboring Schuylkill County. Both were driving motorcycles. After receiving directions from a patron at McDonald's, and while driving through the parking lot the same way they had entered, Mizenko hit his brakes and fell to the ground, sustaining injuries. According to Mizenko, the cause of his fall was a wet greasy substance, like black ice, on the surface of the parking lot, which caused him to skid and lose control.

Shortly before the accident, Charles Shafer ("Shafer"), an employee of McDonald's, had emptied the contents of a shop vac onto the lot near the area where Mizenko fell. In dispute among other issues was whether Shafer knew or should have known the contents of the shop vac, which contained not only dirty water and rocks, but also grease. The shop vac was used to clean the floors at the restaurant, including, at times, cleaning grease around the cooking areas. Also in dispute was whether

Mizenko's conduct contributed to his fall. According to McDonald's, based upon a deposition later given by O'Firer, after receiving the patron's directions, Mizenko gunned the engine of his motorcycle, accelerated through the parking lot, and had to suddenly stop to avoid hitting another vehicle exiting a parking space.

As a result of the accident, Mizenko filed a civil action in the Court of Common Pleas of Philadelphia County on June 29, 2006. In his complaint, Mizenko alleged negligence and recklessness against the defendant, McDonald's Restaurant of Pennsylvania, Inc. ("McDonald's"), and sought compensatory, as well as punitive damages.[1] On January 09, 2007, McDonald's filed an answer with new matter, which denied all material averments of the complaint, and alleged, among other defenses, comparative negligence. Mizenko replied to the new matter on January 29, 2007.

Several months later, on June 13, 2007, McDonald's filed a petition to transfer venue based on forum non conveniens. McDonald's request was granted by order dated July 30, 2007, with the transfer to this court being completed on March 10, 2008.

A jury trial began on February 7, 2011, and ended on February 18, 2011, when a verdict was rendered in favor of McDonald's and against *Mizenko*.[2] On February

---

1. By Stipulation filed on July 20, 2007, the parties agreed to discontinue the action for punitive damages with prejudice.

2. The jury found both parties negligent, attributing 20 percent of casual negligence to McDonald's and 80 percent to Mizenko, thereby precluding Mizenko from recovering damages.

25, 2011, Mizenko filed the instant post-trial motion, seeking judgment notwithstanding the verdict and a new trial.[3] For the reasons which follow, we deny Mizenko's motion in full.

## DISCUSSION

We begin with our standard of review. In *Harman ex rel. Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116 (2000), our Supreme Court explained that

[t]here is a two-step process that a trial court must follow when responding to a request for new trial. First, the trial court must decide whether one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. Second, if the trial court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. The Harmless Error Doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has

---

3. In his motion, Mizenko, requests both judgment notwithstanding the verdict and a new trial. Mizenko's request for judgment notwithstanding the verdict is misplaced. "A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant." *Oxford Presbyterian Church v. Weil-McLain Co. Inc.*, 815 A.2d 1094, 1099 (Pa. Super. 2003) (quotation marks and citation omitted). Since the issues raised in Mizenko's post-trial motion are based on allegedly erroneous evidentiary rulings and jury instructions, to which the only correct remedy is the grant of a new trial, Mizenko's request for judgment n.o.v. will be denied.

suffered prejudice from the mistake.

*Id.* at 1122 (citations omitted). With this standard in mind, we address each of Mizenko's claimed errors.

A. *Child Standard of Care*

Mizenko argues first that we erred in charging the jury under Pennsylvania Suggested Standard Instruction 3.12 (now numbered as 13.130), the standard of care applicable to children, in evaluating Shafer's conduct.

Shafer was 17 years old at the time of the accident. In judging his conduct, McDonald's requested that we instruct the jury on the standard of care applicable to children, which we did over Mizenko's objection. (N.T. 02/17/11, pp.139-40).

On this issue, the instruction given was as follows:

In this case, you are concerned with the care taken or not taken by Charles Shafer, who was 17 years old at the time of the accident. The law does not hold children to the same standard of care as adults. A child is required to exercise the ordinary care appropriate for a child. Specifically, he or she is held to that measure of care that other children of the same age, experience, capacity, and development would ordinarily exercise under similar circumstances.

In applying this standard, the law has placed children of different ages in different categories. Once a child has reached the age of 14, the law presumes that he or she has the capacity to appreciate danger and to exercise

care. With respect to a child 14 years of age or over, and Mr. Shafer was 17 years old, the law puts upon him or her the burden of showing lack of intelligence, prudence, foresight, or restraint such as is usual in those of his or her age.

(N.T. 2/17/11, pp. 168-9).[4] This instruction was accompanied by the following instruction on vicarious liability:

In this case, it is admitted that Charles Shafer was at the time of the occurrence acting as an employee of McDonald's and was engaged in furthering the interest, activities and affairs or business of McDonald's. McDonald's is liable for the negligence or recklessness of its employees occurring while the employee is acting in the course and within the scope of his employment.

Therefore, if you find Charles Shafer was either negligent or reckless in emptying the contents of the shop vac onto McDonald's parking lot, then you must also find McDonald's to have been equally negligent or reckless.

(N.T. 02/17/11, pp.171-2).

---

4. See *Kuhns v. Brugger*, 390 Pa. 331, 340, 135 A.2d 395, 401 (1957), which outlines the three categories that minors are placed in, according to their age, as follows:

> [M]inors under the age of seven years are conclusively presumed incapable of negligence; minors over the age of fourteen years are presumptively capable of negligence, the burden being placed on such minors to prove their incapacity; minors between the ages of seven and fourteen years are presumed incapable of negligence, but such presumption is rebuttable and grows weaker with each year until the fourteenth year is reached.

*Id.*

Mizenko argues that, as a corporation, McDonald's should not reap the benefit of a child standard for judging conduct for which it can be held responsible.

This echoes Mizenko's argument at the time of trial that the intent of instruction 13.130 is to protect a child from liability under an adult standard, not to provide a shield to a corporate defendant who has hired a child. (N.T. 02/17/11, pp. 142-43, 208-209). Such argument, however, misses the mark.

It fails to distinguish between negligence in the hiring or supervision of a child, for which an adult standard of care may well be applicable, and the negligence or recklessness of a child, for which an employer may be held vicariously liable. Stated otherwise, the issue was whether Shafer himself was negligent or reckless, and whether such negligence or recklessness could be attributed to McDonald's. (N.T. 02/17/11, p. 143).

The theory of vicarious liability, requiring some relationship between Shafer, who is asserted to be negligent or reckless, and McDonald's, an employer acting through its employees, imputes Shafer's asserted negligence or recklessness onto McDonald's because of their employee-employer relationship. See *D'Errico v. DeFazio*, 763 A.2d 424, 431 (Pa.Super. 2000) ("[A]n employer is held vicariously liable for the negligent acts of his employee which causes injuries to a third party, provided that such acts were committed during the course of and within the scope of employment.") (quotation marks and citation omitted). Pursuant to this theory, we

charged the jury with analyzing the conduct of Shafer, not that of McDonald's.

The charge on the standard of care for children fourteen years of age or older was applicable in this case given Shafer's age and Mizenko's theory of liability based on Shafer's alleged tortious conduct.[5] It instructed the jury to examine Shafer's conduct when addressing the issue of negligence or recklessness, and explained to the jury, in accordance with the law, that notwithstanding Shafer's age, he was presumptively capable of negligence and recklessness and that the burden of showing otherwise was on him. We find nothing in the charge which was confusing, misleading or unclear. Cf. *Stewart v. Motts*, 539 Pa. 596, 606, 654 A.2d 535, 540 (1995) (stating the standard for evaluating the sufficiency and adequacy of a jury instruction). Furthermore, notwithstanding Mizenko's claim that this instruction held Mizenko to a higher standard of care in proving McDonald's liability,

---

5. Although at one point in Mizenko's brief, in support of his post-trial motion, Mizenko argues that the Court should further have instructed that McDonald's may be held responsible not only for the vicarious liability of Shafer, but also for its negligent supervision. This was not the basis of Mizenko's objection at the time of trial. (N.T. 02/17/11, pp.142-43). Nor did Mizenko expand on this objection after the court's closing instructions were given and before the jury retired to deliberate. (N.T. 02/17/11, pp.208-209). See *Burke v. Buck Hotel, Inc.*, 742 A.2d 239, 243 (Pa.Cmwlth. 1999) (requiring that the specific reason for objection to the court's instructions upon which a party bases its claim of error be made in order to preserve this issue for review, noting, however, that it is not necessary to take a specific exception in order to preserve for review the trial court's refusal to give a requested instruction); cf. *Commonwealth v. Pressley*, 584 Pa. 624, 632, 887 A.2d 220, 225 (2005) (holding, under the rules of criminal procedure, that a specific objection following the jury charge is necessary to preserve an issue concerning the instructions, even where points for charge were submitted by a defendant and denied by the trial court).

no prejudice was suffered since the jury determined both that McDonald's was negligent and that its conduct was a factual cause of the accident.

## B. *Exclusion of Expert Witness Testimony*

Mizenko's second argument concerns our decision to exclude opinion testimony of Mizenko's expert, Dr. Stephen Wilcox, an expert in the field of human factors.

Dr. Wilcox was proffered by Mizenko to render an opinion on whether Shafer acted recklessly in dumping the contents of the shop vac onto McDonald's parking lot. Preliminary to this testimony, Dr. Wilcox authored a report, dated March 22, 2010, whereby he opined that:

1.   What Mr. Shafer did constituted reckless conduct, in that he knowingly and intentionally created a hazard....

2.   That it should have been obvious to Mr. Shafer that he was creating a hazard.

3.   That it was further reckless for Mr. Shafer to fail to examine the result of throwing the fluid onto the travel surface.

(Wilcox Report, p.5). On February 1, 2011, McDonald's filed a motion in limine seeking to preclude Dr. Wilcox's testimony and report arguing that the jury did not require his expertise in understanding the subject matter; Dr. Wilcox was not qualified to render the opinions expressed; and Dr. Wilcox's opinions would invade the province of the jury.

Argument was held on McDonald's motion on February 4, 2011, resulting in an order dated February 7, 2011, which deferred ruling on the motion until after we had an opportunity to review Dr. Wilcox's trial deposition. On February 8, 2011, in chambers, we explained to counsel that we believed Dr. Wilcox could not express an opinion on recklessness for the following reasons: first, the facts are not of a type that require expert testimony to be understood by the jury; second, Dr. Wilcox lacked the expert qualifications to form the opinions sought to be elicited; and third, permitting Dr. Wilcox to express an opinion characterizing the mental state of Shafer and his conduct as being reckless would invade the province of the jury. (N.T. 02/08/11, pp. 74-8). On February 9, 2011, after giving Mizenko's counsel a further opportunity to determine whether any portion of Dr. Wilcox's testimony could be salvaged, we sustained McDonald's objection.[6]

---

6. To the extent Mizenko argued Dr. Wilcox's testimony addressed the implementation and enforcement of McDonald's safety procedures, we found such testimony went beyond the four corners of his report. The expert report focused on the issue of recklessness; as a result, if allowed to testify, Dr. Wilcox would have been limited to discussing only those factors relevant to expressing an opinion on Shafer's alleged reckless conduct.

Pursuant to Pennsylvania Rule of Civil Procedure 4003.5(c), "an expert witness may not testify on direct examination concerning matters which are either inconsistent with or go beyond the fair scope of matters testified to in discovery proceedings or included in a separate report." *Woodward v. Chatterjee*, 827 A.2d 433, 441 (Pa.Super. 2003) (quotation marks and citation omitted). The Explanatory Comment to the rule further states that: "Where the full scope of the expert's testimony is presented in the answer to interrogatories or the separate report, as provided in subdivisions (a)(1) and (2), this will fix the permissible limits of his testimony at the trial." Significant, also, is that on this issue, Mizenko's brief in support of his post-trial motion addresses only his intent to use Dr. Wilcox's testimony to show that McDonald's acted recklessly, not for any other purpose. (Mizenko Brief in Support of Post-Trial Motion, p.6).

In his present motion, Mizenko contends that the law in this Commonwealth allows an expert to testify to the ultimate issue; hence, Dr. Wilcox should have been permitted to render his opinion that Shafer's actions were reckless. The preclusion of his testimony and report, Mizenko argues, resulted in reversible error as it impeded the jury from finding McDonald's reckless. We disagree.

Expert opinions are intended to assist the jury to understand the evidence or to determine a fact in issue when the nature of the case involves scientific, technical or other specialized knowledge beyond that possessed by a layperson. Pa.R.E. 702; see also *Commonwealth v. Nasuti,* 385 Pa. 436, 443, 123 A.2d 435, 438 (1956) ("Expert testimony is admissible in all cases, civil and criminal alike, when it involves explanations and inferences not within the range of ordinary training, knowledge, intelligence and experience."). They are not intended to usurp the function of the jury: to determine the credibility of witnesses, to judge the case as a whole, or to make findings which the jury is equally capable of making on its own. This applies separate and apart from whether the opinion sought to be elicited from an expert "embraces an ultimate issue to be decided by the trier of fact." Pa.R.E. 704.

An expert is not permitted to opine on issues of credibility, yet this is exactly what Dr. Wilcox would have done. In his trial deposition, as in his report, Dr. Wilcox testified what he thought must have been obvious to Shafer. Dr. Wilcox further put forth as fact that Shafer knew, or should have known, that the shop vac contained

grease. (*Wilcox Trial Deposition*, pp.22-24, 34, 41-46). Yet, Shafer himself testified to not knowing the contents of the shop vac until they were dumped out; when he noticed dirty water and rocks, not grease.

"[A]n expert cannot weigh contradictory evidence and place his imprimatur upon a particular version." *Kozak v. Struth*, 515 Pa. 554, 560, 531 A.2d 420, 422-23 (1987) ("In Pennsylvania, experts have not been permitted to speak generally to the ultimate issue nor to give an opinion based on conflicting evidence without specifying which version they accept. These principles have been designed to permit the expert to enlighten the jury with his special skill and knowledge, but leave the determination of the ultimate issue for the jury after it evaluates credibility.") (emphasis added); see also *Commonwealth v. Delbridge*, 578 Pa. 641, 667, 855 A.2d 27, 42 (2003) ("Credibility is an issue uniquely entrusted to the common understanding of laypersons. The teaching of [*Commonwealth v. Dunkle*, 529 Pa. 168, 602 A.2d 830 (1992)] is that expert testimony will not be permitted when it attempts in any way to reach the issue of credibility, and thereby usurp the function of the factfinder.").

In seeking to characterize Shafer's conduct as reckless - a mixed question of law and fact, not simply a factual one - Dr. Wilcox sought to opine on facts which do not require the opinion of an expert for the jury to understand and evaluate, and in doing so, further sought to invade the province of the jury in the application of law to fact. Cf. *Houdeshell v. Rice*, 939 A.2d 981 (Pa.Super.

2007) (upholding trial court's ruling precluding expert testimony as to what a defendant should have done, as no specialized knowledge was required for jury to determine whether defendant acted negligently). To this end, Mizenko was asking the expert to offer an opinion on "all the evidence," and to judge for the jury and conclude on its behalf that Shafer was reckless. Cf. *Kozak*, 531 A.2d at 422 ("[t]he [expert] witness can not be asked to state his opinion upon the whole case, because that necessarily includes the determination of what are the facts, and this can only be done by the jury."); see also *Commonwealth v. Daniels,* 480 Pa. 340, 352, 390 A.2d 172, 178 (1978) (endorsing excluding from evidence a statement by a witness which "amounts to no more than an expression of his general belief as to how the case should be decided.").

Finally, the question of whether Shafer acted recklessly is not a complex issue requiring expert testimony. See *Commonwealth v. Brown*, 544 Pa. 406, 420, 676 A.2d 1178, 1184 (1996) ("[t]he purpose of expert testimony is to assist in grasping complex issues not within the ordinary knowledge, intelligence and experience of the jury.") (quotation marks and citation omitted). On the contrary, it is a matter of ordinary knowledge, intelligence, and experience that can be described to the jury and evaluated by them without the need of an expert. See *Burton v. Horn & Hardart Baking Co.*, 371 Pa. 60, 64, 88 A.2d 873, 875 (1952) ("[e]xpert testimony is inadmissible when the matter can be described to the jury and the condition evaluated by them without the assistance of one claiming to possess special knowledge upon the subject.").

On all these bases, we find that Dr. Wilcox's proffered expert testimony was properly excluded from consideration by the jury.

## C. *Refusal to Allow Cross Examination of Former Employees*

Mizenko next contends that we erred in denying his request to ask leading questions of former employees of McDonald's called by Mizenko on direct examination as part of his case-in-chief.

At the outset of Mizenko's case, Mizenko called four former employees of McDonald's who were employed by McDonald's at the time of the accident.[7] As to each, Mizenko sought permission to call them as of cross-examination and to ask leading questions. McDonald's objected. In sustaining the objection, we determined that unless there was some reason to believe, beyond their mere status as former employees, that the witnesses were hostile, adverse, or prejudiced either against Mizenko or in favor of McDonald's, there was no basis to permit leading questions on Mizenko's direct examination.

The general rule is that leading questions are not permitted on direct examination. However, the Pennsylvania Rules of Evidence, Rule 611(c), provides in part: "When a party calls a hostile witness, an adverse party or a witness identified with an adverse party,

---

7. These were Dorothy VanStrander, Amanda Pointon, Erica Markley Kugler, and Shafer. Ms. VanStrander was last employed by McDonald's on October 31, 2005. With respect to the other three employees, several years had passed between the time of their last employment by McDonald's and the time of trial.

interrogation may be by leading questions." (emphasis added). As is apparent from this language, the rule permits, it does not require, the use of leading questions in the circumstances described.

The danger of leading questions is a perversion of the truth: having the examiner's questions become the testimony of the witness. When leading questions are permitted, it is to compensate for some disadvantage or other circumstance which has been balanced against this danger. In the context of cross-examination generally, the witness has moments earlier committed to a version of the facts, often contrary to that of the examiner's client, which the examiner seeks to analyze, test, challenge, undermine, and sometimes, emphasize. Similarly, leading questions of an adverse or hostile witness are intended, to some measure, as a counterweight against a witness who either has a motive or a personal bias which may color his testimony.

None of the four witnesses at issue is an adverse party or has been shown to have an interest adverse to Mizenko.[8] While at one time, each was employed by McDonald's, none

---

8. In *Commonwealth v. Lambert*, 765 A.2d 306, 360-61 (Pa.Super. 2000), the Pennsylvania Superior Court stated:
[A] witness, other than a party [,] is not considered adverse simply because his testimony is adverse to the calling party. As the term is understood in this context, a witness is adverse to the calling party if the witness has an interest in the issue being tried, and his interest would be increased or promoted if the calling party's adversary prevails. Thus, if the witness is not a party and has no "legal" interest in the outcome of the proceedings, then the witness is not an adverse witness. Whether a witness' interest is adverse to the calling party is a factual determination within the trial court's discretion.
(citations omitted).

was so employed at the time of trial. Such employment as existed was low to mid-level. None of the individuals were owners, officers or directors of McDonald's. Moreover, each employee's past employment with McDonald's and the positions held were made apparent to the jury.

Nor were any of these witnesses hostile. None exhibited any personal animosity or disrespect to Mizenko or his counsel. When questioned, each responded to the questions asked without being evasive, argumentative or sarcastic. Neither the tone nor the manner of their responses were anything but civil. Cf. *Commonwealth v. Lambert,* 765 A.2d 306, 356 (Pa.Super. 2000) ("'[H]ostility' require[s] a showing of surprise during the witness's testimony or an obvious lack of cooperation, reluctance or evasiveness in answering questions.") (quoting trial court).

While we agree with Mizenko that Rule 611(c)'s language permitting leading questions of "a witness identified with an adverse party" expands the use of leading questions beyond that to a hostile witness or an adverse party, this does not automatically open the door to ask leading questions of any person who has or had some relationship with an adverse party, no matter the nature or extent of that relationship. To be sure, in some contexts the identity with the adverse party may be apparent on its face: a spouse, a business associate, or another with an interest in the outcome of the case tied to that of the adverse party. Cf. 42 Pa.C.S.A. § 5935 (authorizing the calling as of cross-examination of an adverse party or a person having an adverse interest).

Such identity, however, is not apparent when the relationship between the calling party and the witness is that between an employer and a former employee. This is even more so, as here, when the employment positions held were low to mid-level, the separation from employment occurred years earlier, and the reasons for that separation may well bear on what attitude the witness holds to his or her former employer. In such circumstances, we do not believe it can be presumed without more that the former employee identifies, as a matter of law, with the adverse party. Cf. *Kauffman v. Carlisle Products Co.*, 323 A.2d 750 (Pa. Super. 1974) (holding a defendant's truck driver who was not a party to personal injury litigation arising out of an automobile-truck collision was not subject to being called as of cross-examination by plaintiff's counsel).

The circumstances of this case did not entitle Mizenko to call McDonald's former employees as of cross-examination for purposes of asking leading questions. Moreover, we believe a review of the full testimony given by each of these witnesses reveals that no prejudice or injustice has been sustained by Mizenko in restricting the form of questioning.[9]

---

9. In sustaining McDonald's objection, we expressly left open the possibility for Mizenko to ask leading question if any of the witnesses were shown to be evasive, non-responsive, uncooperative or partial to McDonald's. (N.T. 02/08/11, p.72). Cf. *Commonwealth v. Bibbs*, 970 A.2d 440, 453 (Pa.Super. 2009) ("A witness may be treated as hostile by the party calling him where the testimony of the witness is unexpected, contradictory to earlier statements, harmful to the party calling the witness, and where an injustice would result if the request to treat the witness as hostile is denied.").

To the extent Mizenko argues McDonald's also should have been precluded from asking leading questions of these same witnesses, such objection was neither raised at the time of trial nor included in Mizenko's

## D. *Spoliation - Refusal of Adverse Inference Charge*

Lastly, Mizenko asserts this court erred in refusing to instruct the jury on Pennsylvania Suggested Standard Jury Instruction 5.06 (now numbered as 5.60) with respect to McDonald's alleged spoliation of evidence.

The factual basis for this request is McDonald's Customer Incident Report, a one-page form designed for information to be completed on both sides. During discovery, the defense provided Mizenko with a copy of the report completed on the face side only. Defense counsel informed Mizenko that they could not locate the original document and were unable to determine whether the reverse side of the form was ever completed. It was thought that the original document may have been misplaced or destroyed when the restaurant's building was extensively renovated several years earlier. (N.T. 02/16/11, pp.122-23). In any event, a copy of the reverse side of the reporting form in blank was supplied so Mizenko would know what information might be missing.

In requesting the charge, Mizenko argued that the fact

---

post-trial motion.

    It is axiomatic that, in order to preserve an issue for review, litigants must make timely and specific objections during trial and raise the issue in post-trial motions. Granting or denying an untimely objection lies in the discretion of the trial court. Requiring a litigant to make a timely, specific objection during trial ensures that the trial court has a chance to correct alleged trial errors. We have stressed that "[w]aiver is indispensable to the orderly functioning of our judicial process and developed out of a sense of fairness to an opposing party and as a means of promoting jurisprudential efficiency by avoiding appellate court determinations of issues, which the appealing party has failed to preserve."

Harman ex rel. *Harman v. Borah*, 562 Pa. 455, 471, 756 A.2d 1116, 1124-25 (2000) (citations omitted).

McDonald's was unable to produce the second-side of the original report was in and of itself sufficient to support a spoliation instruction. Having found that this failure resulted in minimal prejudice, if any, we denied Mizenko's request for an adverse inference instruction.

In *Schroeder v. Department of Transportation*, 551 Pa. 243, 710 A.2d 23 (1998), our Supreme Court listed certain factors to be considered in determining whether a party should be sanctioned when potentially relevant evidence within that party's control or possession has been lost or destroyed:

(1) the degree of fault of the party who altered or destroyed the evidence;

(2) the degree of prejudice suffered by the opposing party, and

(3) the availability of a lesser sanction that will protect the opposing party's rights and deter similar conduct.

*Id.* at 27; see also *Croydon Plastic Co., Inc. v. Lower Bucks Cooling & Heating*, 698 A.2d 625, 629 (Pa. Super. 1997) ("The decision whether to sanction a party, and if so the severity of such sanction, is vested in the sound discretion of the trial court."), appeal denied, 553 Pa. 689, 717 A.2d 1028 (1998); *Creazzo v. Medtronic, Inc.*, 903 A.2d 24, 28-30 (Pa.Super. 2006) (discussing the above-referenced spoliation-of-evidence standards).

With respect to fault, we agree with Mizenko that McDonald's is responsible for the loss of the original

document and not knowing whether the second side of the report was ever completed. Erika Markley recalled filling out the report shortly after the accident and then handing it to someone at McDonald's. She believed, but could not recall for certain whether or not she in fact completed the reverse side of the form. Unfortunately, it was not known who the report was given to, what became of the original, or why a copy was only kept of one side.[10] Having found that McDonald's was responsible for this lack of relevant information, we also found, based upon the evidence of record, that there was no evidence of bad faith or a deliberate decision to conceal or destroy relevant information.

As to the second prong of the test, we found a relatively low level, if any, prejudice resulting from the absence of the second side of the report. The second side contained three sections to be completed, if relevant, entitled: 5. Alleged Playplace/Playland Incident; 6. Alleged Premium/Promotional Product Incident; and 7. Alleged Customer Accident/Property Damage. Clearly, the only relevant section is Section 7: Alleged Customer Accident/Property.

The first line of section 7 asks for the "type of incident," with one of the following to be circled: "customer accident," "property damage," or "other." The next two lines ask the

---

10. Ms. Markley testified this was the first time she completed an incident report. She left McDonald's and began a new job approximately two weeks after the accident. After filling out the report and handing it to someone at McDonald's, she assumed it was sent in, but did not know. Whether only the face side of the report was copied and sent, another possibility, is unknown.

shift manager to "describe customer accident/property damage" and "describe any hazards or conditions which may have contributed" to the incident, with space for information to be inserted. In finding little, if any, prejudice resulted to Mizenko from the absence of this information in the report, we note first that not only was it uncertain whether the reverse side of the incident report was ever completed, but also that the information responsive to these inquiries was equally, if not better, known to Mizenko. In addition: the local police in Mahoning Township were contacted, arrived within approximately fifteen minutes of the accident, and spent over an hour at the scene observing conditions and conducting an investigation. Pictures of the parking lot surface and what Mizenko contended was the cause of his fall, were taken by either Mizenko or O'Firer[11] within an hour of the accident and were used extensively at trial. None of the witnesses disputed what was depicted in these pictures. Finally, the last inquiry under Section 7 of the form asks for "recommended corrective action" which Shafer and other witnesses testified it consisted of cleaning the effected area with a degreaser solvent.

In light of these findings, we found that a charge on spoliation was unjustified under the circumstances. Cf. *Mount Olivet Tabernacle Church v. Edwin L. Wiegand Division*, 781 A.2d 1263, 1273 (Pa. Super. 2001) (holding that the trial court did not abuse its discretion in not

---

11. At trial, Mizenko testified that the pictures were taken by O'Firer. However, in O'Firer's trial deposition, O'Firer testified the pictures were taken by Mizenko.

giving a spoliation instruction since the loss of evidence from the fire scene was not attributable to any negligence or bad faith on the part of the offending party and relatively little prejudice was proven to have occurred). [12]

## CONCLUSION

Having determined that no error of law or abuse of discretion was committed, and further determined, after a review of the whole record, that even absent the foregoing, the likelihood of prejudice is minimal, we deny Mizenko's motion in full.

---

12. Also worth noting is that Mizenko was not prohibited from presenting evidence or arguing this issue to the jury. As discussed in *Mount Olivet Tabernacle Church v. Edwin L. Wiegand Division*, 781 A.2d 1263, 1269 (Pa.Super. 2001), "the evidentiary rationale [for the spoliation inference] is nothing more than the common sense observation that a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy [evidence] is more likely to have been threatened by [that evidence] than is a party in the same position who does not destroy the document." (quotation marks and citation omitted). The jury instructions received by the jury expressed and included the jury's right to make inferences from the evidence presented. (N.T. 02/17/11, pp.149-50).