J-A09026-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: E.H., A.B., AND C.B., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.H. | |
| | No. 1481 MDA 2016 |

Appeal from the Order Entered August 12, 2016
In the Court of Common Pleas of Huntingdon County
Orphans' Court at No(s): 2016-0004, 2016-0005, 2016-0006

BEFORE:  SHOGAN, OTT, and STABILE, JJ.

MEMORANDUM BY SHOGAN, J.:                          **FILED JUNE 13, 2017**

Appellant, J.H. ("Mother"), appeals from the order entered on August 12, 2016, terminating her parental rights to her three minor children E.H., A.B., and C.B. (collectively "the Children").[1]  After review, we affirm.

---

[1] We note that Mother improperly filed a single notice of appeal.  **See** Pa.R.A.P. 341, note (stating, *inter alia*, that where one order resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed).  However, had Mother filed separate notices of appeal challenging the termination of her parental rights to each child, the appeals likely would have been consolidated pursuant to Pa.R.A.P. 513.  In light of this consideration and because we discern no impediment to appellate review, we shall proceed to address the merits of Mother's appeals in this single memorandum.

The record reflects that Mother is the biological mother of the Children. J.B. is the biological father of A.B. and C.B.,[2] and B.D. is the biological father of E.H.[3] The Children were declared dependent on August 8, 2013, and subsequently placed in protective custody on February 14, 2014. The Children were placed together in their current foster home on October 17, 2014.

The orphans' court provided the following relevant factual background:

[Huntingdon County Children and Youth Services ("CYS" or "the Agency")] was first introduced to [Mother] after she was charged with leaving two of her children unattended in a vehicle in May of 2013. Thereafter, the Agency continued to receive reports of [Mother] leaving the children unsupervised outside while at home. The children were again removed from [Mother's] home after she left the children unattended in a vehicle for a second time. Throughout the investigation, [Mother] was reluctant to cooperate with the Agency. After being restricted to supervised visits in October of 2014, [Mother] never progressed to unsupervised visits due to the ever present concerns for the safety of the children. Dependency records showed repetitive concerns with [Mother's] parenting abilities and with her ability to maintain a safe environment for the children.

The dependency orders also show that the Court has had concerns about [Mother's] drug use. *See* October 29, 2014, Permanency Review Order. In September and October of 2014, [Mother]r had three peculiar hospital visits. On one of the trips a dose of Narcan, an opiate antidote, helped alleviate [Mother's]

---

[2] J.B. has filed an appeal from the order involuntarily terminating his parental rights at a separate docket number and is not a party to this appeal.

[3] B.D. voluntarily relinquished his parental rights to E.H. and is not a party to this appeal.

symptoms. On another trip, she tested positive for substances that included methadone and benzodiazepines. On a third hospital trip, she left against medical advice. While [Mother] alleges that she suffers from a possible seizure disorder, we are not convinced that drug use was not at least a contributing factor in the hospital visits.

[M]other's mental health condition and her inability to seek consistent treatment has resulted in many of the incidents. She has been diagnosed with anxiety and depression on Axis I, as well as a personality disorder on Axis II. She is not currently seeking treatment for those mental diagnoses. On her own volition, she stopped taking her prescribed medications in 2014. She has asserted that she does not believe in medication.[3] The testimony of Dr. Chiswick, a licensed psychologist who conducted an evaluation of [Mother], unequivocally shows that the children have been at risk for serious injury due to the conduct of [Mother]. Dr. Chiswick testified that [Mother] lies about important issues, she is dependent on substances, and she cannot provide a safe environment for the children. The concerns for the safety of the children, [Mother's] mental health issues and [Mother's] dependence on substances have been repetitive. The [A]gency has provided services, parenting classes and mental health counseling, but [Mother] has made minimal, if any, progress toward becoming a suitable caretaker for the children.

> [3] Dr. Chiswick testified that [Mother] said, "I do not believe in doctors and medicine. I just believe in God and prayer. Medication kills you. And so long as I have my family, I will be fine." N.T. 4/11/16, p. 42.

Since the children were removed from the home in 2014, [Mother] has not progressed past weekly supervised visitation. Even though [Mother] has undergone mental health treatment in the past, she testified that she currently is not seeking mental health treatment. [M]other has repeatedly proven that she is incapable of performing her parental duties and has failed to improve since the start of the dependency process.

* * *

Dr. Kristen Hennessy, a licensed psychologist and an advanced certified trauma practitioner, has been providing

therapy for E.H. since October 1, 2015, and she sees E.H. twice weekly. She paints a picture of a child preoccupied with his safety, and one who suffers from post traumatic stress disorder. The most disturbing testimony from Dr. Hennessey was that "(E.H) has been afraid on multiple levels and has been surprised to hear that adults would do what was necessary to protect a child ...." N.T. 4/11/2016, p. 63. He also has a great fear that … [M]other and J.B. will come and get him. E.H is obsessed with fear, however he now only trusts his foster father to protect him, according to Dr. Hennessey. E.H. is a child who will be in care for a long period of time due to the failures of those charged with the duty to protect him.

J.B. was certainly aware of [Mother's] deficiencies, yet he continued to place the children in the care of [M]other, both before and during the pendency of the dependency proceedings. The conduct of [Mother] is so bizarre and complex that J.B. cannot argue that he was not aware that her conduct was traumatizing the children.

\* \* \*

When the Court was presented with facts regarding [Mother's] conduct, the children were placed with [J.B] with the direction to reside at paternal grandfather's house with the children. To put it bluntly, this Court took a chance by allowing [J.B.] to parent on his own. Individuals at the Agency (including their solicitor) had multiple conversations with [J.B.] about not allowing contact with [Mother]. Instead, after the children were removed from [Mother's] care by the Court, they were reunited with her by [J.B.]. [J.B.] was well aware of [Mother's] destructive path at this point, and well aware of the Court Order dated February 19, 2014.

Even after the children were exposed to multiple family trips to the emergency room evidencing the bizarre behavior of [M]other in September and October of 2014, [J.B.] continued to reside in the same house with [Mother] and the children. It was only through [Mother's] medical records that the Agency discovered that [J.B.], Mother, and the Children] were living together again. [J.B] explained his contemptuous and dangerous actions as "bad judgment" and a "mistake." While we agree with his assessment, we cannot allow such potentially horrific

> mistakes to happen again when it comes to the protection of children.

Orphans' Court Opinion, 8/24/16, at 3-5.

On January 8, 2016, CYS filed petitions to involuntarily terminate Mother's parental rights to the Children. The orphans' court held hearings on the petitions in April and May of 2016. On August 12, 2016, the orphans' court entered orders involuntarily terminating Mother's parental rights to the Children. The record reflects that Thomas M. Dickey, Esquire, represented Mother before the orphans' court. Despite having counsel, Mother filed a timely *pro se* appeal on September 2, 2016. While it is unclear when Attorney Dickey ceased his representation, on September 6, 2016, the orphans' court appointed Andrew R. Carson, Esquire, to represent Mother on appeal. Attorney Carson recognized that when Mother filed her *pro se* appeal in this children's fast track case, she neglected to simultaneously file a concise statement of errors complained of on appeal as required by Pa.R.A.P. 905(a)(2) and Pa.R.A.P. 1925(a)(2). Attorney Carson petitioned the orphans' court for an extension of time in which to file the statement, and the orphans' court granted the extension. Mother filed a counseled statement of errors on October 13, 2016. The orphans' court had previously filed an opinion in this matter on August 22, 2016, and it subsequently filed an order on September 8, 2016, stating that its reasons for the orders terminating Mother's parental rights were set forth in that August 22, 2016

opinion. Thus, both Mother and the orphans' court have complied with Pa.R.A.P. 1925.

On appeal, Mother raises the following issues for this Court's consideration:

I. Whether the trial court lacked jurisdiction to terminate [Mother's] parental rights where the petition did not contain a specific averment that the petitioning agency would assume and maintain custody until such time as the children are adopted.

II. Whether the trial court erred in admitting evidence over [Mother's] objection where the expert witness for the agency was permitted, over objection, to express an opinion as to [Mother's] credibility, where [Mother] subsequently testified at trial, thus irreparably harming her ability to rebut the agency's case.

III. Whether the trial court erred in terminating the parental rights of [Mother] where:

a. the trial court's findings of fact were deficient in that the court's findings were based entirely on testimony and observations outside of the statutory period provided for under 23 Pa.C.S. § 2511, the record lacks findings of fact as to any parent-child bond, the record lacks findings of fact that the petitioning agency would assume custody pending termination and adoption, and the court did not render specific, enumerated findings of fact, thus depriving a reviewing court of meaningful review[.]

b. the trial court committed an error of law and/or abused its discretion in determining that the agency had proven by clear and convincing evidence that grounds for termination existed and that termination would be in the best interest of the children[.]

Mother's Brief at 5 (footnote omitted).[4]

Our standard of review in cases of involuntary termination of parental rights is well settled:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> As we discussed in [*In re:*] *R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)], there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012) (internal citations omitted). Additionally, the burden is upon the petitioner to prove by clear

---

[4] For purposes of our discussion, we have renumbered Mother's issues on appeal.

and convincing evidence the existence of grounds for termination of parental rights. *Id*. at 821.

Moreover, we have explained:

> [t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation and internal quotation marks omitted).

Mother first alleges that the orphans' court lacked jurisdiction in this matter due to CYS's failure to comply with the Adoption Act. 23 Pa.C.S. §§ 2101-2938. Specifically, Mother avers that the orphans' court lacked jurisdiction because CYS's petition to terminate Mother's parental rights did not satisfy the requirements set forth in 23 Pa.C.S. § 2512(b). Mother's Brief at 20. Strict compliance with the Adoption Act is a prerequisite to the orphans' court's jurisdiction to hear a petition to terminate parental rights in connection with a proposed adoption. *In re Adoption of J.F.D.*, 782 A.2d 564, 565. Whether a court has subject matter jurisdiction is a question of law, for which our standard of review is *de novo* and our scope of review plenary. *B.L. v. T.B.*, 152 A.3d 1014, 1016 (Pa. Super. 2016).

Section 2512(b) provides as follows:

> **(b) Contents.**--The petition shall set forth specifically those grounds and facts alleged as the basis for terminating parental rights. The petition filed under this section shall also contain an averment that the petitioner will assume custody of the child until such time as the child is adopted. If the petitioner is an

agency it shall not be required to aver that an adoption is presently contemplated nor that a person with a present intention to adopt exists.

23 Pa.C.S. § 2512(b).

CYS's petition did not contain the phrase "until such time as the child is adopted," and Mother claims this flaw precluded the orphans' court from having jurisdiction to hear this matter pursuant to *In re Adoption of J.F.D.*, 782 A.2d 564 (Pa. Super. 2001). We disagree.

In *J.F.D.*, the attorney who was appointed to represent a minor in a dependency action subsequently filed a petition to involuntarily terminate the parental rights of J.F.D.'s parents. The similarity *J.F.D.* bears with the instant case is that, in the termination petition, the attorney did not state that he had custody or would keep custody of the child until such time as the child was adopted. *J.F.D.*, 782 A.2d at 567. On appeal, this Court held that the attorney's failure to state that he had custody and would retain custody until adoption was fatal, and it divested the trial court of jurisdiction. We conclude that *J.F.D.* is distinguishable.

The attorney in *J.F.D.*, who was also the petitioner, was precluded from asserting that he had custody because, very simply, he did not have custody of the child; Chester County Children, Youth, and Families had custody. *J.F.D.*, 782 A.2d at 565. Moreover, Chester County Children, Youth, and Families was not a party. In the instant case, the Agency is the Petitioner and the custodian, and there is no dispute that CYS possessed

both legal and physical custody of the Children. This fact was explicitly stated in the first paragraph of each of the three termination petitions. Petitions, 1/8/16, at unnumbered 1. There is no evidence suggesting that CYS would relinquish custody of the Children before such time as the Children may be adopted. We will not entertain a "magic words" argument, as we are satisfied that the petitions met the requirements of Section 2512(b).

Next, Mother avers that the orphans' court erred in allowing an expert to testify regarding Mother's credibility because Mother subsequently testified at trial. We disagree.

Our standard of review is well settled. Decisions regarding the admission of expert testimony are left to the sound discretion of the orphans' court, and we will reverse the orphans' court's decision only if we conclude there was an abuse of discretion or error of law. ***In re Adoption of R.K.Y.***, 72 A.3d 669, 675 (Pa. Super. 2013) (citation omitted). Moreover, an expert witness is not permitted to comment on the totality of the evidence, where the evidence is in conflict or the credibility of other witnesses as such comment improperly impinges upon the jury's exclusive province. ***Kozak v. Struth***, 531 A.2d 420, 422-424 (Pa. 1987).

The challenged testimony occurred during counsel for CYS's examination of its expert, Dr. Nancy Chiswick. Dr. Chiswick testified

regarding Mother's childhood, mental health issues, personality, behaviors, and drug consumption. The challenged testimony is as follows:

> There is also a long history that I feel confident in documenting that [Mother] lies about many important things. I'm not sure whether she knows that or not because I think sometimes people, once they have told a lie many times, they begin to - -
>
> [Mother's Counsel]: Your Honor, I'm just going to object to this portion. She may be an expert and may be able to give an opinion as to some things, but I'm just going to object. Any credibility or anything would be your final determination. And just because she is an expert in some matters, that doesn't mean she can testify about everything. And I believe that's one of those issues[,] whether or not my client has been truthful.
>
> THE COURT: It goes to her analysis. It's her opinion as an expert based on what she has done in this case. And she has come to the conclusion that [Mother] has lied. I'm not making a finding right now, until I hear all the evidence, that [Mother] has lied, but certainly an expert can testify based on her interviews that the subject lied while she was being interviewed. So please proceed.
>
> * * *
>
> [Mother's Counsel]: How does that affect [Mother's] interactions with people, I guess?
>
> [Dr. Chiswick]: It leads them to - - it leads other people to be very confused about what is going on and what really happened. So [Mother] ends up with people who maybe want to support her, not being able to know how to support her. Also, I think that when a person is a chronic liar, when they have used that as a means of organizing life, they sometimes come to believe some of those statements of their own. And that's not reality. Then it leads them down paths that cause more problems.

N.T., 4/11/16, at 17-19.

As the record reveals, the orphans' court sitting as both judge and fact finder allowed Dr. Chiswick to testify as to her observations and opinions; however, the trial court specifically stated that it was not making any findings until it heard all of the evidence. The orphans' court permitted Dr. Chiswick to provide her opinion regarding, *inter alia*, Mother's mental health issues. In Dr. Chiswick's opinion, a factor negatively contributing to Mother's inability to parent the Children was Mother's untruthfulness.

After careful review, we conclude that the orphans' court, sitting without a jury, properly weighed the evidence, and the court's decision on the ultimate question of involuntarily terminating Mother's parental rights was untainted by Dr. Chiswick's comments concerning Mother's propensity to lie. Thus, we discern no abuse of discretion. Additionally, to the extent there was an error of law in permitting Dr. Chiswick's opinion into evidence, any error was harmless. Harmless error is defined as an error that does not affect the verdict. ***Yacoub v. Lehigh Valley Medical Associates, P.C.***, 805 A.2d 579, 590 (Pa. Super. 2002) (citations omitted). Here, the evidence overwhelmingly supported the conclusion that Mother was unwilling or unable to tend to the Children and keep them safe. Any testimony concerning Mother's ability to be truthful was of minor importance compared to the vast evidence supporting termination of Mother's parental rights.

In her final issue on appeal, Mother argues that the orphans' court erred in concluding that CYS had proven by clear and convincing evidence

that grounds for termination existed under 23 Pa.C.S. § 2511(a), that termination would be in the best interest of the Children under 23 Pa.C.S. § 2511(b), and that meaningful review was precluded because the orphans' court failed to make findings of fact.

The orphans' court analyzed sections 2511(a)(1), (2), (5), (8), and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination.**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(5)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and

termination of the parental rights would best serve the needs and welfare of the child.

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).  This Court may affirm the trial court's decision regarding the termination of parental rights with regard to **any one** subsection of section 2511(a).  *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*) (emphasis added).

While the orphans' court concluded that CYS satisfied the requirements of 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8),[5] on review, we focus on 23

---

[5] Orphans' Court Opinion, 8/24/16, at 3.
*(Footnote Continued Next Page)*

Pa.C.S. § 2511(a)(2). 23 Pa.C.S. § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." *In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012). "The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties." *In the Interest of A.L.D., Jr.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citation omitted). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id*. at 340.

The orphans' court provided the following analysis:

> Although the elements of the subsections of Section 2511(a) tend to run together, we must reiterate here that the children have been removed for more than 12 months, the conditions that led to the removal are still present, and for more than 18 months the children have been in foster care. [Mother] has never progressed beyond weekly supervised visits, and during that same time period she has been minimally and moderately compliant with her permanency plan. The

*(Footnote Continued)* _____

- 15 -

termination of the parental rights would best serve the needs and welfare of the children. [Mother] has had ample opportunities to parent these children, and she repeatedly has failed to provide them with proper care. [CYS's] initial concerns considered [Mother's] mental health, her possible drug use, and her lack of parenting skills. All of these still remain a concern to date. [Mother] cannot meet the basic needs of [the] children, and they require permanency with a safe and stable environment.

Orphans' Court Opinion, 8/24/16, at 8. We agree with the orphans' court's assessment. Mother has failed or refused to remedy the conditions that led to the Children's placement with CYS, despite ample opportunities and assistance. Accordingly, we conclude that CYS proved grounds for termination under section 2511(a)(2) by clear and convincing evidence.

Next, we must review Mother's challenge to the orphans' court's findings under 23 Pa.C.S. § 2511(b). This Court has explained that the focus in terminating parental rights under section 2511(a) is on the parent, but under section 2511(b) the focus is on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court stated as follows:

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). *In In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention"

should be paid to discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791.

***In re: T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

The trial court succinctly explained the relationship between Mother and the Children as follows:

> A report from a supervised visit on November 12, 2013 indicates that "[Mother] shows love for her children and cares for them; however the worker feels that [Mother] has unrealistic expectations for them." While this Court has no doubt that [Mother] loves these children, the Court must focus on the best interest of the children. The facts have never changed regarding [Mother's] behavior. While there may be a mother-child bond, based on the overwhelming testimony, the bond is not a healthy bond.[6]
>
> > [6] Dr. Kristen Hennessy's testimony regarding the oldest child's weekly sessions is telling and points to the fact that any bond with [Mother] would be a destructive bond, and a bond that should be severed at all costs.

Orphans' Court Opinion, 8/24/16, at 9.

We discern no error of law or abuse of discretion in the orphans' court's findings. Mother has failed to provide a safe or nurturing environment for the Children, and while Mother may have an affinity for the Children, the bond between Mother and the Children is not a healthy bond, and severing that bond is in the Children's best interests. It is well settled that "we will not toll the well-being and permanency of [a child] indefinitely." ***In re Adoption of C.L.G.***, 956 A.2d at 1007 (citing ***In re Z.S.W.***, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put

on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

In conclusion, we conclude that the trial court correctly terminated Mother's parental rights based on clear and convincing evidence, and that termination of those rights served the Children's best interests. Accordingly, we conclude that Mother is due no relief on appeal, and we affirm the order terminating Mother's parental rights.[6]

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/13/2017

---

[6] In reference to Mother's allegation that the orphans' court failed to provide its findings of fact in this matter and, thus, deprived this Court of meaningful appellate review, Mother's Brief at 28, we conclude that this claim is specious. The orphans' court thoroughly addressed the factual and procedural background in this matter and provided its findings and the rationale for its decision. Orphans' Court Opinion, 8/24/16, at 1-9.