**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHARON LEE BLACK | : | |
| | : | |
| Appellant | : | No. 1480 WDA 2022 |

Appeal from the Judgment of Sentence Entered October 17, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0007975-2021

BEFORE:  DUBOW, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED: May 7, 2024**

Sharon Lee Black ("Appellant") appeals from the judgment of sentence of 90 days' electronic home monitoring followed by a term of 28 months' probation entered after the court found her guilty of two counts of Driving Under Influence of Controlled Substance ("DUI") and one count of Careless Driving.[1]  She challenges the denial of her suppression motion and the sufficiency of the evidence supporting one of her DUI convictions.  After careful review, we affirm.

The trial court set forth the following factual and procedural history of the case, which is supported by the record.

> On April 16, 2021, Officer Paris Johnson, Sr.,[] was working "Shaler School District Crossing Detail" for children at 7:00 a.m. when he observed a Ford Escape come to a complete stop in the middle of the intersection at a solid red light.  He observed that

---

[1] 75 Pa.C.S. §§ 3802(d)(1), 3802(d)(2), and 3714(a), respectively.

the vehicle's headlights were on and the brake lights were engaged displaying a solid red, which indicated the vehicle was still in drive[].

Officer Johnson approached the vehicle and observed the driver's head was tilted forward toward the steering wheel and that she appeared to be unresponsive, which prompted him to call County Dispatch. As Officer Johnson walked to the rear of the vehicle in order to provide Dispatch the defendant's license plate information, the driver, later identified as Sharon Black, attempted to drive off, almost striking the vehicle facing the opposite direction in the left lane[].

The Officer made contact with the defendant who stated that she was on her way home from working a 12-hour shift and had stopped at the methadone clinic. Ms. Black informed the officer that she is prescribed methadone and takes her dose at the clinic. While speaking with the defendant[,] the officer observed that the defendant's speech was slowed and her mannerisms and movement were slow. Ms. Black advised that this was from working a 12 hour shift[].

Shortly thereafter, Ross/West View EMS responded to the scene to assess Ms. Black's wellbeing[,] and no further medical issues were discovered[]. Officer Johnson then requested Ms. Black to submit to standardized field sobriety tests, to which she agreed. The tests administered were the walk-and-turn and the one-leg stand, both of which were conducted on a flat, leveled sidewalk, free of any debris[]. During the walk-and-turn, Ms. Black was observed not to touch heel-to-toe on several steps and did not follow the instructions of pivoting properly in her turn around. During the one-leg-stand, Ms. Black was unable to keep her foot elevated and placed her foot on the ground to re-evaluate three times[].

Officer Johnson testified that based upon his training and experience, all of the above indicated that Ms. Black showed signs of impairment that rendered her incapable of safely operating a motor vehicle[]. Officer Johnson then placed Ms. Black under arrest for suspicion of DUI. Officer Johnson read Ms. Black the DL-26B form[,] and she agreed to undergo a chemical blood test and signed the form. The Allegheny County lab report was entered into evidence as Commonwealth Exhibit 1. The report of Ms. Black's blood test was positive for methadone and marijuana.

Trial Ct. Op., 2/28/23, at 1-3 (unpaginated).

On December 10, 2021, the Commonwealth charged Appellant with, *inter alia*, the above charges. On January 27, 2022, Appellant filed a motion to suppress her blood test results, asserting that her arrest following the field sobriety tests was not supported by probable cause. The court held a hearing on May 26, 2022, during which Officer Johnson testified in conformance with the above facts. Following counsels' arguments, the court denied Appellant's suppression motion.

Appellant's non-jury trial proceeded on June 23, 2022. The parties stipulated to the admission of Officer Johnson's suppression hearing testimony because he was unavailable to testify the day of trial. The parties also stipulated to the admission of the lab report indicating the presence of cannabinoids and methadone in Appellant's blood sample. The Commonwealth presented no further evidence.

Appellant's supervisor at her place of employment testified on Appellant's behalf as to Appellant's demeanor during her overnight shift just prior to the incident, stating that Appellant appeared sober and coherent. Per stipulation, the court admitted a document from Summit Treatment Services indicating Appellant received a scheduled dose of methadone at 5:45 a.m. the

morning of the incident.[2] Following argument from counsel, the court took the matter under advisement.

On June 30, 2022, the court delivered its verdict in open court, finding Appellant guilty of the above offenses. The court continued the matter for sentencing pending the completion of a presentence investigation report.

On October 17, 2022, the court sentenced Appellant on the violation of Section 3801(d)(1) as a second offense to 90 days' probation with restrictive conditions (ankle monitor). The court imposed no penalties on Appellant's remaining convictions.

Appellant filed a timely appeal. She raises the following issues for our review:

1. Should Appellant's pretrial motion to suppress the blood test result evidence in her 75 Pa.C.S. § 3802(d)(1-2) prosecution have been suppressed, given the Commonwealth's failure to establish that probable cause existed to arrest her for the crime of driving while under the influence of a controlled substance?

2. Should Appellant's conviction for having violated 75 Pa.C.S. § 3802(d)(2) be vacated on grounds of insufficient evidence given the Commonwealth's failure to establish that it was her consumption of marijuana and methadone, rather than some other circumstance (such as extreme fatigue), that rendered her unable to safely drive an automobile?

Appellant's Br. at 4.

---

[2] The parties also stipulated to the admission of a letter from an employee at a medical facility indicating Appellant was in treatment as of March 2021 and had been diagnosed with bipolar disorder and posttraumatic stress disorder.

## A.

Appellant first argues that the evidence obtained from the blood draw should be suppressed because "probable cause to arrest her for having violated Pennsylvania's [DUI] statute, 75 Pa.C.S. § 3802, did not exist in her case; instead, she should have been issued a ticket for careless driving, and permitted to proceed on her way." Appellant's Br. at 15. In support, Appellant challenges the officer's observations of her performance on the field sobriety tests and asserts that there are other plausible explanations for her poor performance. *Id*. at 19-23. She states that the fact that she did not stagger or fall over during the heel-to-toe walk and one-legged stand indicates that the officer's conclusion was based on "trivial failure on her part" and that the officer arrested her only on a "hunch that [she] had consumed drugs." *Id*. at 24. She concludes that the totality of the circumstances, viewed from the perspective of "an objective reasonable police officer," does not support a finding of probable cause to support her arrest. *Id*. at 24. We disagree.

### Standard of Review

We review the trial court's decision to deny a motion to suppress to determine "whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Freeman*, 150 A.3d 32, 34 (Pa. Super. 2016) (citation omitted). "Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth

- 5 -

and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Id.* "Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial." *Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017).

We are highly deferential to the suppression court's factual findings and credibility determination. *See Commonwealth v. Batista*, 219 A.3d 1199, 1206 (Pa. Super. 2019). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003). "[I]f the record supports the suppression court's findings, we may not substitute our own findings." *Bastista*, 219 A.3d at 1206 (citation omitted). However, we "give no deference to the suppression court's legal conclusions" and review them *de novo*. *Id.* (citation omitted).

*

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of our state Constitution "protect citizens from unreasonable searches and seizures." *In re D.M.*, 781 A.2d 1161, 1163 (Pa. 2001). "To secure the right of citizens to be free from . . . [unreasonable searches and seizures], courts in Pennsylvania require law enforcement officers to

demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." ***Commonwealth v. Beasley***, 761 A.2d 621, 624 (Pa. Super. 2000). Our Supreme Court has defined three levels of interaction between citizens and police officers: (1) mere encounter, (2) investigative detention, and (3) custodial detention.

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Ranson***, 103 A.3d 73, 76-77 (Pa. Super. 2014) (citation omitted).

To determine whether a warrantless arrest is justified by probable cause, we review the "totality of the circumstances." ***Commonwealth v. Dommel***, 885 A.2d 998, 1002 (Pa. Super. 2005) (citation omitted). "Probable cause does not involve certainties[;]" rather, it involves "the factual and practical considerations of everyday life on which reasonable and prudent men act." ***Id***. (citations omitted). "It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause." ***Id.*** (citation omitted.

Here, the suppression court concluded that based on Officer Johnson's testimony—that Appellant stopped in the middle of the intersection, was

initially somewhat unresponsive and slow when he spoke with her, and almost drove off into oncoming traffic—the officer had "enough for him to proceed beyond the mere traffic stop[.]" N.T. Suppression, 5/26/22, at 39-40. The court also concluded that the officer's testimony demonstrated that, under the circumstances, including Appellant's admission of having taken her prescribed dose of methadone prior to the incident, the officer had reasonable suspicion to conduct an investigative detention and that his testimony regarding the field sobriety tests established probable cause to arrest Appellant on suspicion of DUI. *Id*. at 40-41.

Based on our review, we conclude that the suppression court's findings of fact are supported by the evidence presented at the suppression hearing. Officer Johnson testified that (1) he had been with the Millvale Borough Police Department since 2020, following his employment as a police officer in Ohio; (2) he had administered at least 50 field sobriety tests; (3) he was aware from his past experience that methadone slows down a person's speech and can make people sleepy; and (4) his decisions to administer the field sobriety tests are generally based on "multiple circumstances" attendant at the time of the stop. *Id*. at 5, 16-17, 27. He also testified that Appellant stopped her vehicle in the middle of the intersection past the crosswalk, and when he approached Appellant in her car, she appeared sleepy and had slow speech, but did not have red eyes or reek of alcohol. *Id*. at 7, 9, 16, 19, 29. After Appellant informed him that she had recently taken a prescribed dose of methadone at

a clinic, Officer Johnson became very concerned about her sleepiness and her ability to drive safely so he requested the services of an emergency medical service ("EMS") to conduct a health assessment. *Id*. at 16; *see also id*. at 20 (Officer Johnson testifying that he had never encountered a driver falling asleep as he spoke to them), and 21 (Officer Johnson reiterating that Appellant was very sleepy while he was talking to her prior to EMS's arrival). After EMS concluded that Appellant did not appear to have any apparent health conditions, Officer Johnson asked Appellant if "she would be willing to submit to a field sobriety test," to which she agreed. *Id*. at 10; Trial Ct. Op. at 2 (unpaginated). Officer Johnson further testified that he arrested Appellant for suspicion of DUI based on Appellant's unsuccessful performance on the field sobriety tests, her admission that she had taken her prescribed methadone dose shortly before the incident, and his observations of her behavior. *Id*. at 17.

Appellant does not address the suppression court's conclusion that Officer Johnson's request that she submit to field sobriety tests after the initial traffic stop was supported by reasonable suspicion. Nor does she challenge the voluntariness of her consent to participate in those tests. Rather, Appellant's argument is, essentially, that the suppression court should have given less weight to Officer Johnson's testimony regarding her performance on the field sobriety tests because there were other potential explanations for her behavior.

Based on our review of the record—and pursuant to our standard of review that requires us to review the evidence in the light most favorable to the Commonwealth and provide deference to the suppression court's findings of fact and weight determinations—we conclude that the court properly determined that Officer Johnson had probable cause to arrest Appellant and the blood test results were, therefore, admissible. Accordingly, Appellant's first issue fails to garner relief.

**C.**

Appellant next challenges the sufficiency of the evidence supporting her conviction of 75 Pa.C.S. § 3802(d)(2). Appellant's Br. at 26-33. While she concedes the evidence was sufficient to support her conviction under Section 3801(d)(1),[3] she argues that "the Commonwealth's failure to present any evidence whatsoever supporting the proposition that the consumption of marijuana or methadone results in the diminution of the motor skills needed to drive safely means that the evidence presented at her trial was insufficient to convict her if having violated § 3802(d)(2)." *Id*. at 26-27.

We review a challenge to the sufficiency of the evidence to "determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as

---

[3] Section 3802(d)(1) prohibits driving when "[t]here is in an individual's blood any amount of" a Schedule I or II controlled substance or a metabolite of a controlled substance. 75 Pa.C.S. § 3802(d)(1).

verdict winner, support the conviction beyond a reasonable doubt." *Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa. Super. 2012) (citation omitted). "The evidence established at trial need not preclude every possibility of innocence[,] and the fact-finder is free to believe all, part, or none of the evidence presented." *Id*. (citation omitted).

"It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder." *Id*. (citation omitted). Notably, the "Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Id*. (citation omitted).

Section 3802(d)(2) provides that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle . . . [if t]he individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle. 75 Pa.C.S. § 3802(d)(2). Section 3802(d)(2) "does not require proof of a specific amount of a drug in the driver's system. It requires only proof that the driver was under the influence of a drug or combination of drugs to a degree that the ability to drive is impaired." *Tarrach*, 42 A.3d at 345.

In addition, "[e]xpert testimony is not required" to prove that a defendant violated Section 3802(d)(2). *Id.* Rather, a need for expert testimony arises only when the factfinder "is confronted with factual issues whose resolution requires knowledge beyond the ken of the ordinary layman.'" *Commonwealth v. Griffith*, 32 A.3d 1231, 1239 (Pa. 2011) (quoting *Kozak v. Struth*, 531 A.2d 420, 422 (Pa. 1987)). The determination of whether expert testimony is required is "evaluated on a case-by-case basis, taking into account not just the specific drug at issue, prescription or otherwise, but also the nature and overall strength of the Commonwealth's evidence, viewed pursuant to the general standard expressed in *Kozak*, *supra*." *Griffith*, 32 A.3d at 1239.

In *Griffith*, our Supreme Court addressed "whether the evidence to establish a violation of subsection 3802(d)(2) can ever be sufficient in the absence of expert testimony as to causation." *Id.* at 1235. After analyzing the statute and reviewing prior Superior Court opinions, the Court concluded that the following evidence proved that the appellee had violated Section 3802(d)(2): "An experienced police officer closely observed Appellee's behavior, demeanor, unsteadiness, and inability to perform field sobriety tests, all of which led him to request laboratory tests for the detection of controlled substances in Appellee's blood" and "Appellee admitted taking one prescription medication in the morning of the day of her arrest." *Id*. at 1240. The *Griffith* Court also noted that the blood test results showed the presence

of two additional controlled substances, including a metabolite. *Id*. The Court, thus, concluded the evidence was sufficient to support the Section 3802(d)(2) conviction and reversed the Superior Court's disposition.

*Griffith* is dispositive in the instant case. Here, the trial court found that "the Commonwealth had presented sufficient evidence at trial to conclude that [Appellant] was driving while under the influence of drugs which impaired her ability to safely drive," observing:

> Among the evidence presented by the Commonwealth was testimony from Officer Johnson concerning the following: his observation of [Appellant's] vehicle coming to a complete stop in the middle of an intersection at a solid red light; [Appellant's] near collision with opposing traffic in the left lane while [he] approached the vehicle; [his] observations of [Appellant's] head tilted forward toward the steering wheel when he approached her vehicle; [Appellant's] slowed mannerisms and slowed speech; [Appellant's] unsatisfactory performance of the field sobriety tests; [Appellant's] admission to the officer that she had just come from the methadone clinic where she took her prescribed dose of methadone; and, the lab report of [Appellant's] blood test which was positive for [both] methadone and marijuana.

Trial Ct. Op., at 3-4. We add that Officer Johnson testified that he had seen people under the influence of alcohol and methadone and that Appellant's actions were consistent with his experiential knowledge of the impairing effects of these substances. *See* N.T. Suppression at 16-17.

Based on our review, Appellant's argument regarding the evidence the Commonwealth did not present does not persuade us that the evidence that was presented was insufficient to support the Section 3802(d)(2) conviction. Viewing the evidence in the light most favorable to the Commonwealth, as we

- 13 -

must, we conclude that the evidence was sufficient to support the court's verdict of guilt for violating Section 3802(d)(2). Appellant's second issue, thus, garners no relief.

**D.**

In conclusion, the record supports the suppression court's determination that Officer Johnson had probable cause to arrest Appellant for driving while impaired. Thus, the court properly denied Appellant's motion to suppress the results of the blood tests. In addition, based on our review and analysis of relevant case law and consideration of Appellant's arguments, we conclude that sufficient evidence supported the court's verdict of guilt for violating 75 Pa.C.S. § 3802(d)(2). We, thus, affirm Appellant's judgment of sentence.

Judgment of Sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

5/7/2024